**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-2453**

WEST VIRGINIA CWP FUND, as carrier for Mountaineer Coal Development,

Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR; LONNIE A. SMITH,

Respondents.

On Petition for Review of an Order of the Benefits Review Board.  (15-0522-BLA)

Argued:  December 5, 2017                               Decided:  January 26, 2018

Before KEENAN, DIAZ, and HARRIS, Circuit Judges.

Petition for review denied by published opinion.  Judge Harris wrote the opinion, in which Judge Keenan and Judge Diaz joined.

**ARGUED:**  Jeffrey Robert Soukup, JACKSON KELLY PLLC, Lexington, Kentucky, for Petitioner.  Leonard J. Stayton, Inez, Kentucky, for Respondents.  **ON BRIEF:** William S. Mattingly, JACKSON KELLY PLLC, Lexington, Kentucky, for Petitioner.

PAMELA HARRIS, Circuit Judge:

Petitioner West Virginia Coal Workers' Pneumoconiosis Fund seeks review of a decision awarding black-lung benefits to former coal miner Lonnie A. Smith. An administrative law judge ("ALJ") found that Smith was entitled to benefits under the "fifteen-year presumption" of the Black Lung Benefits Act: Because Smith had developed a totally disabling respiratory impairment after working in underground coal mines for over fifteen years, it could be presumed that he suffers from pneumoconiosis arising from his coal-mine employment; and because Smith's employer could not rebut that presumption, Smith was eligible for benefits.

The Fund argues that Smith is not entitled to compensation under the Act because no doctor has affirmatively diagnosed him with pneumoconiosis. But that is not how presumptions work. The fifteen-year presumption is expressly intended to relieve certain miners of the "often insurmountable burden" of proving the existence of pneumoconiosis, shifting to the employer the burden of showing that a long-term miner with a disabling respiratory impairment does *not* in fact suffer from pneumoconiosis. *Hobet Mining, LLC v. Epling*, 783 F.3d 498, 501–02 (4th Cir. 2015). Because the ALJ's determination that Smith's employer could not make that showing is supported by substantial evidence and consistent with law, we deny the petition for review.

## I.

### A.

The Black Lung Benefits Act, 30 U.S.C. §§ 901–44, provides benefits to "coal miners who are totally disabled due to pneumoconiosis," commonly known as black lung

disease.  30 U.S.C. § 901(a).  In the medical community, pneumoconiosis describes conditions in which the lungs develop a "fibrotic reaction" to coal dust lodged permanently within them.  *See* 20 C.F.R. § 718.201(a)(1).  The statutory definition of "pneumoconiosis" is broader, reaching not only so-called "clinical pneumoconiosis" but also "legal pneumoconiosis," or "any chronic lung disease or impairment . . . arising out of coal mine employment."  *Id.* § 718.201(a)(2); *see* 30 U.S.C. § 902(b).

Generally, a miner must prove entitlement to benefits under the Act with medical evidence showing both that "he has pneumoconiosis arising from coal mine employment" and that this disease is a "substantially contributing cause of [a] totally disabling respiratory or pulmonary impairment."  *Epling,* 783 F.3d at 501.  But for certain miners, Congress has made it easier to establish eligibility for benefits.  *Id.*  A claimant who has spent at least fifteen years working in underground coal mines and suffers from a "totally disabling respiratory or pulmonary impairment," 30 U.S.C. § 921(c)(4), may rely on the Act's "fifteen-year presumption," under which "we presume both prongs of the showing required for benefits eligibility: that the claimant has pneumoconiosis arising from coal mine employment, and that this disease is a substantially contributing cause of his disability."  *Epling*, 783 F.3d at 502.

Once the presumption is triggered, the burden shifts to the employer to demonstrate that the miner is not in fact eligible for benefits.  As relevant here, the employer may rebut the fifteen-year presumption by establishing that the claimant does not have pneumoconiosis "arising out of coal mine employment."  20 C.F.R. § 718.305(d)(1)(i); *see Epling*, 783 F.3d at 502.  Under the governing regulations, a lung

3

disease or impairment "aris[es] out of coal mine employment" if it is "significantly related to, or substantially aggravated by" coal dust exposure. 20 C.F.R. § 718.201(b). Thus, to satisfy this standard for rebuttal – known as "pneumoconiosis rebuttal" – an employer must prove the obverse: that the miner's impairment is *not* "significantly related to, or substantially aggravated by," the fifteen years or more he has spent in coal mines. If an employer cannot make this showing (or otherwise rebut the fifteen-year presumption),[1] then benefits must be granted.

**B.**

Lonnie Smith was a coal miner for at least thirty-one years. In 2003, he retired because shortness of breath and other ailments were impairing his ability to complete the heavy manual labor demanded by his job in the mine warehouse. At that time, Smith was working for Mountaineer Coal Development, doing business as Marrowbone Development.[2] Smith filed his claim for black lung benefits in November 2010. After

---

[1] An employer also may attempt to rebut the second prong of the showing required for benefits eligibility: that a claimant's pneumoconiosis is a substantially contributing cause of his total disability. Here, an employer must establish that "*no part* of the miner's respiratory or pulmonary total disability was caused by pneumoconiosis." 20 C.F.R. § 718.305(d)(1)(ii) (emphasis added). This "rule-out" standard imposes a heavy burden on the employer, who must "rule out *any* connection between a miner's pneumoconiosis and his disability." *See W. Va. CWP Fund v. Bender*, 782 F.3d 129, 135 (4th Cir. 2015) (emphasis added) (internal quotation marks omitted). The ALJ in this case found that Smith's employer could not meet this demanding standard, and the employer has not challenged that determination either before the Benefits Review Board or on appeal to this court.

[2] As Smith's last coal mine employer, Mountaineer Coal Development does not contest the fact that it is liable for any benefits owed to him. *See generally* 20 C.F.R. (Continued)

4

the district director issued a proposed decision denying his claim, Smith requested a formal hearing in front of an ALJ.

Smith provided the sole testimony at the hearing, although three different doctors had evaluated him in relation to his claim. The Department of Labor proffered a medical report by its chosen examiner, Dr. Rasmussen. Medical reports by the employer's experts, Drs. Rosenberg and Spagnolo, also were admitted into evidence, along with the transcript of Dr. Spagnolo's deposition. Because severe weather prevented the parties from deposing Drs. Rasmussen and Rosenberg prior to the hearing, the ALJ agreed to hold the record open for later submission of their deposition transcripts.

The employer's experts, Drs. Rosenberg and Spagnolo, concluded that Smith did not have either clinical or legal pneumoconiosis. In his 2011 written report, Dr. Rasmussen agreed that x-rays of Smith's lungs did not reveal the impairments required for a clinical pneumoconiosis diagnosis. He did, however, diagnose legal pneumoconiosis. Unlike the other doctors, Dr. Rasmussen tested Smith not only at rest, but also while undergoing an incremental treadmill exercise study. Because Smith could achieve only 60% of his predicted maximum oxygen intake during this test, Dr. Rasmussen determined that Smith was suffering from impaired lung function with regard to oxygen transfer during light exercise. And because coal dust exposure was a

§§ 725.490, 725.495. The Fund has assumed that liability as Mountaineer Coal's insurance carrier.

5

significant contributing factor to that impairment, Dr. Rasmussen made a finding of legal pneumoconiosis.

When Dr. Rasmussen finally was deposed, he unexpectedly revealed that he had examined Smith two years earlier, in 2009, in connection with a claim for benefits later withdrawn. At that time, it turned out, the results of a similar treadmill exercise study had been entirely normal, with no indication of the gas-transfer impairment Rasmussen identified in his 2011 report. The doctor admitted that this quick progression of symptoms was "a little fast" for what one would expect if coal dust exposure were a cause. J.A. 206, 210. As a result, in light of the 2009 examination, he was no longer prepared to state affirmatively "that [Smith's] coal mine dust [exposure] was really a significant co-contributor" to his impairment. J.A. 216. At the same time, however, Dr. Rasmussen could not "rule [coal dust] out" as a significant contributor. J.A. 206, 216.

The Fund asked Dr. Rasmussen to provide his 2009 report to be attached as an exhibit to his deposition, drawing an objection from Smith. Because the deposition took place after the hearing, the ALJ did not rule on the admissibility of Dr. Rasmussen's previously undisclosed 2009 report until he rendered his final decision and order. In that decision, the ALJ excluded from evidence both the report and Dr. Rasmussen's testimony regarding the report, on the grounds that the employer had already submitted the two affirmative medical reports permitted by regulation. *See* 20 C.F.R. § 725.414(a)(3)(i).

The ALJ went on to award Smith benefits under the Act. The first and critical step in this analysis was the determination that Smith could invoke the Act's fifteen-year presumption. The ALJ concluded (and the Fund no longer disputes) that Smith had more

6

than the necessary fifteen years of qualifying coal mine employment. And Smith's gas-transfer impairment, the ALJ found, constitutes a total pulmonary or respiratory disability that prevents Smith from performing his usual coal mine work or its equivalent. *See* 20 C.F.R. § 718.204(b)(1)(i). In making this disability finding, the ALJ gave particular weight to Dr. Rasmussen's opinion, because in addition to being well-documented and well-reasoned, it was informed by an exercise-based study that better reflected the exertional requirements of Smith's latest employment in the mine warehouse than did the analyses of Drs. Rosenberg and Spagnolo.

Because the ALJ found that Smith was entitled to the benefit of the fifteen-year presumption, the only remaining question was whether the employer had satisfied its burden of rebutting that presumption. After thoroughly reviewing the record evidence, the ALJ concluded that the employer could not meet the standard for pneumoconiosis rebuttal, which would require it to show that Smith's respiratory impairment was *not* "significantly related to, or substantially aggravated by" his years of coal dust exposure in the mines. *See* 20 C.F.R. § 718.201(b). Again, for reasons he explained at length, the ALJ found Dr. Rasmussen's report and testimony to be the most convincing. The ALJ recognized that after the 2009 report was called to his attention, Dr. Rasmussen stepped back from his initial affirmative diagnosis of legal pneumoconiosis, stating that "he would 'not necessarily believe' that he 'could say' that the [c]laimant's coal dust exposure was 'really a significant contributor,'" though he also "'couldn't rule it out.'" J.A. 74 (quoting J.A. 216). But because the 2009 report and associated testimony had been excluded from the record, the ALJ explained, that statement was likewise

7

inadmissible. And in any event, the ALJ determined that even if it were considered, Dr. Rasmussen's response to the 2009 report was insufficient to rebut the presumption of legal pneumoconiosis: "[A]lthough [Dr. Rasmussen] did not feel that he had sufficient data to posit coal dust as a significant contributor to [Smith's] impairment, he also did not feel that he had sufficient data to posit the opposite view, that it was *not* a significant contributing factor." J.A. 74 (emphasis added).

In light of his finding that the employer had not rebutted the fifteen-year presumption, the ALJ awarded benefits to Smith. The Benefits Review Board affirmed, holding that both of the ALJ's critical determinations – that Smith was entitled to invoke the fifteen-year presumption, and that Smith's employer had failed to rebut the presumption – were supported by substantial record evidence and consistent with law. This timely petition for review followed.

## II.

In black lung cases, our review is highly deferential. We ask only "whether substantial evidence supports the factual findings of the ALJ and whether the legal conclusions of the [Board] and ALJ are rational and consistent with applicable law." *Lewis Coal Co. v. Dir., Office of Workers' Comp. Programs*, 373 F.3d 570, 575 (4th Cir. 2004). In so doing, "we must be careful not to substitute our judgment for that of the ALJ." *Harman Mining Co. v. Dir., Office of Workers' Comp. Programs*, 678 F.3d 305, 310 (4th Cir. 2012). "[I]t is for the ALJ, as the trier of fact, to make factual and credibility determinations, and we therefore defer to the ALJ's evaluation of the proper

8

weight to accord conflicting medical opinions." *Epling*, 783 F.3d at 504 (internal citation and quotation marks omitted).

## A.

Though not a main focus of its appeal, the Fund does challenge the premise of the ALJ's decision: that the fifteen-year presumption applies in this case. Specifically, the Fund disputes the ALJ's determination that Smith is totally disabled by a respiratory or pulmonary impairment. Like the Board, we perceive no error in that finding.

The Fund is correct that the employer's doctors, Spagnolo and Rosenberg, did not diagnose Smith with a total disability. The ALJ instead chose to credit Dr. Rasmussen's assessment that Smith was totally disabled due to his oxygen-transfer impairment. The ALJ thoroughly explained why he gave controlling weight to Dr. Rasmussen's report – the only one that analyzed the results of an exercise-based study – over those of the other doctors, neither of whom directly addressed how Smith's demonstrated drop in oxygen consumption upon exertion would affect his ability to perform his job. "It is the role of the ALJ – not the appellate court – to resolve" a "battle of the experts." *Westmoreland Coal Co. v. Cochran*, 718 F.3d 319, 324 (4th Cir. 2013). For our purposes, it is enough that the ALJ considered all relevant evidence and explained his rationale in resolving any conflict in the testimony. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439 (4th Cir. 1997). Indeed, the ALJ's relative weighting of the medical testimony appears to have been left unchallenged before the Benefits Review Board. *See* J.A. 86 n.8 ("We affirm, as unchallenged on appeal, the [ALJ's] decision to give less weight to the opinions of Drs. Rosenberg and Spagnolo on the issue of total disability.")

9

To the extent the Fund has a more specific complaint, it appears to be that Dr. Rasmussen's disability diagnosis should not have been credited because Rasmussen failed to explain how he determined that Smith's impairment – exertional shortness of breath – was caused by a primary lung disease and not another, independent condition. But as the Board explained, causation, or disease etiology, is not relevant at this stage of the inquiry. In determining whether the fifteen-year presumption applies, what matters is simply whether the claimant "has a respiratory or pulmonary impairment . . . that would preclude the performance of [the] claimant's usual coal mine work." J.A. 87. Questions about the cause of that impairment go to the next step of the analysis, and to whether the employer can rebut the presumption that the claimant's impairment is significantly related to coal dust exposure. *Id.*

The ALJ's determination of total disability is supported by substantial record evidence and consistent with applicable law. Accordingly, the ALJ properly concluded that Smith is entitled to the benefit of the fifteen-year presumption.

**B.**

Under the fifteen-year presumption, Smith is presumed to be suffering from pneumoconiosis arising from his coal-mine employment. The only remaining question is whether the ALJ and Board erred in determining that the employer could not rebut that presumption, by showing that in fact Smith's impairment is *not* "significantly related to, or substantially aggravated by," his many years of coal-dust exposure. *See* 20 C.F.R. § 718.201(b). We perceive no such error.

10

In finding that the employer could not prove that Smith's disabling impairment has no significant relationship to coal dust exposure, the ALJ relied on the assessment of Dr. Rasmussen that "it was impossible to rule out coal dust as a contributor to the [c]laimant's blood-gas impairment." J.A. 72. As the ALJ explained, although Dr. Rasmussen, in connection with his 2009 report, was reluctant to state affirmatively that coal dust was a significant contributor to Smith's impairment, he also could not "posit the opposite view, that it was *not* a significant contributing factor." J.A. 74 (emphasis added). As a result, the ALJ concluded, Dr. Rasmussen's testimony – including his testimony regarding the 2009 report – could not satisfy the employer's burden of proving that Smith's condition is not significantly related to coal dust exposure.

The Fund does not challenge the ALJ's decision to credit the report and testimony of Dr. Rasmussen over the contrary assessments of Drs. Rosenberg and Spagnolo, who attributed Smith's impairment entirely to causes unrelated to coal dust exposure. (Indeed, the ALJ thoroughly justified that decision, noting, among other factors, Dr. Spagnolo's failure to explain "how he could definitively exclude" coal dust exposure as a "significant contributing factor." J.A. 73.) Instead, the Fund's only allegation of error, before our court as before the Board, is that the ALJ failed to recognize that once the 2009 report was called to his attention, Dr. Rasmussen could not make an affirmative diagnosis of legal pneumoconiosis. Specifically, the Fund points to Dr. Rasmussen's unwillingness to state, in the language of the statute, that Smith "has a disease, including any chronic respiratory or pulmonary impairment, significantly related to or substantially aggravated by his dust exposure from coal mine work." J.A. 217. Without an affirmative diagnosis

11

of legal pneumoconiosis from Dr. Rasmussen (or the other two doctors), the Fund argues, legal pneumoconiosis is proven absent, satisfying the Fund's rebuttal burden.

But that has the fifteen-year presumption exactly backwards. Once the presumption is invoked, there is no need for the claimant to prove the existence of pneumoconiosis; instead, pneumoconiosis arising from coal mine employment is presumed, subject only to rebuttal by the employer. Indeed, relieving certain claimants of the obligation to come forward with affirmative diagnoses of pneumoconiosis is precisely the point of the Black Lung Benefits Act's fifteen-year presumption: Congress adopted that provision to shift the costs of uncertainty about disease causation away from sick miners seeking benefits and onto their employers, in cases where a miner's length of service makes it reasonable to assume a health impact from coal dust exposure. *See W. Va. CWP Fund v. Bender*, 782 F.3d 129, 141 (4th Cir. 2015). The only question at this stage of the analysis, in other words, is whether the *employer* has come forward with affirmative proof that the claimant does *not* have legal pneumoconiosis, because his impairment is not in fact significantly related to his years of coal mine employment.

We have no reason to second-guess the ALJ's determination that the employer failed to meet that rebuttal burden. The Board affirmed as "unchallenged on appeal" the ALJ's finding that "the opinions of Drs. Rosenberg and Spagnolo are insufficient to disprove that [Smith] has legal pneumoconiosis." J.A. 88. That leaves Dr. Rasmussen, and as described above, the ALJ concluded that even when considering the 2009 report showing a normal treadmill exercise study, Rasmussen could not opine that coal dust exposure "was not a significant contributing factor" to Smith's impairment. J.A. 74.

12

That characterization of Rasmussen's testimony is fully supported by the record.  *See* J.A. 206 ("Can you rule out coal mine dust exposure as a cause of his pulmonary impairment?"  "No, you can't rule it out."); *id.* at 216 ("I would not necessarily believe I could say that his coal mine dust was really a significant co-contributor, I couldn't rule it out.").  And as the ALJ explained, it means that Dr. Rasmussen's testimony – even taking into account his testimony in connection with the 2009 report – also is insufficient to prove that Smith's impairment is not significantly related to his coal mine employment.

## C.

The Fund devotes much of its briefing to the ALJ's preliminary evidentiary ruling, which excluded from the record Dr. Rasmussen's 2009 report and associated testimony on the ground that the employer already had submitted the two medical reports allowed by regulation.  *See* 20 C.F.R. § 725.414(a)(3)(i).  According to the Fund, the ALJ impermissibly departed from Board precedent by failing to announce its ruling before issuing a final decision, thereby depriving the employer of the opportunity to argue for a good-cause exception to the two-report limit.

The Board rejected that argument.  It agreed that it is "preferable for an [ALJ] to rule on evidentiary objections before issuance" of a final decision.  J.A. 85.  But the Board found no prejudice in this case, given that the employer was on notice of Smith's objection to inclusion of the 2009 report and nevertheless failed to argue for a good-cause exception in its closing argument letter to the ALJ.

We need not resolve this evidentiary issue.  The premise of the Fund's argument is that Dr. Rasmussen's testimony regarding the 2009 report and normal treadmill exercise

13

test, if properly admitted, would have been sufficient to rebut the presumption of legal pneumoconiosis. But as explained above, the ALJ determined otherwise. Even if the testimony taken in connection with the 2009 report were considered, the ALJ found, Dr. Rasmussen's ultimate conclusion – colloquially, that he could neither "rule in" nor "rule out" coal dust as a significant contributing cause of Smith's impairment – was insufficient to prove that Smith's impairment was not significantly related to his years of coal mine employment. Because that alternative finding is supported by substantial record evidence and consistent with the burden-shifting regime established by the fifteen-year presumption, resolution of the evidentiary issue raised by the Fund would have no bearing on the outcome of this case.

## III.

For the foregoing reasons, we deny the Fund's petition for review.

*PETITION FOR REVIEW DENIED*