**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 22-2072**

JEWELL SMOKELESS COAL CORPORATION,

Petitioner,

v.

PEGGY L. SHOOK, on behalf of and survivor of Billie H. Shook; DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,

Respondents.

On Petition for Review of an Order of the Benefits Review Board. (21-0535 BLA; 21-0536 BLA)

Submitted: May 31, 2024                    Decided: June 10, 2024

Before WILKINSON, WYNN, and THACKER, Circuit Judges.

Petition denied by unpublished per curiam opinion.

**ON BRIEF:** Charity A. Barger, STREET LAW FIRM, LLP, Grundy, Virginia, for Petitioner. Brad A. Austin, WOLFE WILLIAMS & REYNOLDS, Norton, Virginia, for Respondent Shook. Seema Nanda, Solicitor of Labor, Barry H. Joyner, Associate Solicitor, Jennifer Feldman Jones, Deputy Associate Solicitor, Sean Bajkowski, Counsel for Appellate Litigation, Olgamaris Fernandez, Attorney, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent Director, Office of Workers'

Compensation Programs, United States Department of Labor.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jewell Smokeless Coal Corporation ("Employer") petitions for review of the Benefits Review Board's (BRB) decision and order affirming the Administrative Law Judge's (ALJ) award of miner's and survivor's benefits to Peggy Shook ("Mrs. Shook") under the Black Lung Benefits Act ("the Act"), 30 U.S.C. §§ 901-944. Employer primarily argues that the ALJ lacked the authority to adjudicate Mrs. Shook's claims because he was not properly appointed under the Appointments Clause, U.S. Const. Art. 2, § 2, cl. 2, and because the statutory limitations on the ALJ's removal under 5 U.S.C. § 7521 violate the separation-of-powers doctrine. Employer further contends that, even if the ALJ had the authority to consider Mrs. Shook's claims, he improperly concluded that Mrs. Shook was entitled to the 15-year presumption of total disability due to pneumoconiosis because she failed to establish that her late husband, Billie Shook ("Shook"), worked in conditions substantially similar to those in an underground mine. Finally, Employer argues that, even if Mrs. Shook was entitled to the presumption, the ALJ improperly concluded that Employer failed to rebut the presumption. We deny the petition.

I.

After briefing in this case, we issued *K & R Contractors, LLC v. Keene*, 86 F.4th 135 (4th Cir. 2023), which squarely addressed Employer's constitutional challenges to the ALJ's authority. We review these challenges de novo. *Id.* at 143.

As for the Appointments Clause challenge, we recognized in *Keene* that Department of Labor (DOL) ALJs who adjudicate claims under the Act are inferior officers who "can be appointed only by the President, a court of law, or a head of department." *Id.* at 140;

3

*see id.* at 143 (noting parties' agreement "that DOL ALJs are inferior officers"). But we also concluded that the Secretary of Labor's ("the Secretary") "express ratification" of the appointment of a DOL ALJ who was selected through the competitive hiring process "cured any constitutional defect in his original hiring." *Id.* at 144. In rendering this conclusion, "[w]e decline[d] [the petitioner's] invitation to look behind the individual appointment letters signed by Secretary to inquire into his deliberative process," as "[t]he letters [were] conclusive evidence that the appointments were made." *Id.* (alterations and internal quotation marks omitted); *see id.* at 141 (describing letter). Based on *Keene*, we conclude that the ALJ who adjudicated Mrs. Shook's claims "had been constitutionally appointed by the time [he] took any action in this case." *Id.* at 144.

We also acknowledged in *Keene* that the statutory removal protections for ALJs potentially implicate the Constitution's separation-of-powers provision. *Id.* at 148 ("A statutory requirement to use ALJs, who Congress has insulated from the President's removal authority by two layers of for-cause tenure protection, brings the separation-of-powers question into sharp relief."). But we declined to reach this constitutional question. *See id.* at 149-50. Instead, observing that courts of appeals regularly "den[y] relief on removal claims when the challengers have not shown that the constitutional violation caused them harm," we found that the petitioner "ha[d] not asserted any possible harm resulting from the allegedly unconstitutional limitations on the President's ability to remove DOL ALJs." *Id.* at 149 (collecting cases). Similarly, here, Employer has failed to allege any possible harm resulting from the removal restrictions afforded the ALJ. Accordingly, "regardless of whether the removal protections for DOL ALJs are

4

constitutional," Employer is not entitled to vacatur of the BRB's decision on this ground. *Id.*

## II.

Having concluded that the ALJ had the authority to adjudicate Mrs. Shook's claims, we now address whether he did so properly. We review a decision awarding black lung benefits to determine "whether substantial evidence supports the factual findings of the ALJ and whether the legal conclusions of the [BRB] and ALJ are rational and consistent with applicable law." *Hobet Mining, LLC v. Epling*, 783 F.3d 498, 504 (4th Cir. 2015) (internal quotation marks omitted); *see W. Va. CWP Fund v. Dir., Off. of Workers' Comp. Programs*, 880 F.3d 691, 697 (4th Cir. 2018) ("*Smith*") ("In black lung cases, our review is highly deferential."). "To determine whether this standard has been met, we consider whether all of the relevant evidence has been analyzed and whether the ALJ has sufficiently explained his rationale in crediting certain evidence." *Epling*, 783 F.3d at 504 (internal quotation marks omitted).

But "the duty to resolve conflicts in the evidence rests with the ALJ as factfinder. And when conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled or has pneumoconiosis, the responsibility for that decision falls on the ALJ." *Sea "B" Mining Co. v. Addison*, 831 F.3d 244, 252 (4th Cir. 2016). Accordingly, in conducting our analysis, "we do not undertake to reweigh contradictory medical evidence, make credibility determinations, or substitute our judgment for that [of the ALJ]." *Id.* Indeed, "[s]o long as an ALJ's findings . . . are supported by substantial evidence, they must be sustained." *Epling*, 783 F.3d at 504. "Substantial evidence is more than a mere

scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Addison*, 831 F.3d at 252 (internal quotation marks omitted).

Generally, to establish eligibility for benefits, a miner must demonstrate that: (1) "he has pneumoconiosis, in either its clinical or legal form"; (2) "the pneumoconiosis arose out of coal mine employment"; (3) "he is totally disabled by a pulmonary or respiratory impairment" and (4) "his pneumoconiosis is a substantially contributing cause of his total disability." *W. Va. CWP Fund v. Bender*, 782 F.3d 129, 133 (4th Cir. 2015) (internal quotation marks omitted); *see* 20 C.F.R. § 718.202(d)(2) (2024). "But for certain miners, Congress has made it easier to establish eligibility for benefits." *Smith*, 880 F.3d at 695. If the miner proves that he was employed in underground coal mines or in substantially similar conditions for at least 15 years, that he has had a chest X-ray interpreted as negative for complicated pneumoconiosis, and that he has a totally disabling respiratory or pulmonary impairment, he is entitled to the rebuttable presumption that he is totally disabled due to pneumoconiosis. 30 U.S.C. § 921(c)(4); 20 C.F.R. § 718.305(b) (2024).

The parties do not dispute that Shook worked for at least 15 years in the mines and that he suffered from a totally disabling respiratory impairment. Accordingly, whether Mrs. Shook is entitled to the 15-year presumption depends on whether she established that her husband worked in conditions substantially similar to those in an underground mine.

The regulations provide that "[t]he conditions in a mine other than an underground mine will be considered 'substantially similar' to those in an underground mine if the claimant demonstrates that the miner was regularly exposed to coal-mine dust while

6

working there." 20 C.F.R. § 718.305(b)(2). The DOL explained that "[t]he term 'regularly' [was] added to clarify that a demonstration of sporadic or incidental exposure is not sufficient to meet the claimant's burden" of establishing substantial similarity. Regulations Implementing the Byrd Amendments to the Black Lung Benefits Act: Determining Coal Miners' and Survivors' Entitlement to Benefits, 78 Fed. Reg. 59,102, 59,105 (Sept. 25, 2013).

The claimant is not required "to produce scientific evidence specifically quantifying the miner's exposure to coal mine dust during non-underground mining." *Id.* Instead, the DOL clarified, the claimant may establish substantial similarity "by lay evidence addressing the individual miner's experiences." *Id.* The DOL emphasized that the presumption was enacted "to assist miners and their survivors in establishing entitlement to benefits" and that "[p]utting insurmountable hurdles in claimants' paths"—like requiring scientific evidence to establish substantial similarity—"does not comport with that intent." *Id.* Furthermore, "because a claimant's dust exposure evidence will be inherently anecdotal, it would serve no purpose for the [DOL] to develop an objective, and therefore dissimilar, benchmark of underground mine conditions for comparison purposes." *Id.*

Employer contends that the ALJ improperly concluded that Shook's working conditions were substantially similar to those in an underground mine because the evidence does not establish that Shook was regularly exposed to coal dust. We disagree. Although Shook passed away before he could testify, the ALJ properly considered Shook's representation on his benefits application regarding his work duties and exposure to dust; Dr. Rosenberg's description of Shook's dusty work conditions, which Shook relayed to

7

him during a physical examination; and Mrs. Shook's testimony regarding the state of her husband's clothing when he finished his shifts. And because this was more than a mere scintilla of evidence establishing that Shook's working conditions were substantially similar to those in an underground mine, we conclude that Mrs. Shook could invoke the 15-year presumption.

"Once the presumption is triggered, the burden shifts to the employer to demonstrate that the miner is not in fact eligible for benefits." *Smith*, 880 F.3d at 695. An employer can rebut the 15-year presumption by establishing that the miner does not suffer from pneumoconiosis arising out of his coal mine employment ("pneumoconiosis rebuttal"), 20 C.F.R. § 718.305(d)(1)(i) (2024), or "that no part of the miner's respiratory or pulmonary total disability was caused by pneumoconiosis" ("causation rebuttal"), 20 C.F.R. § 718.305(d)(1)(ii) (2024). Under the pneumoconiosis rebuttal method, the employer must prove "that the miner's impairment is *not* significantly related to, or substantially aggravated by, the [15] years or more he has spent in the coal mines." *Smith*, 880 F.3d at 695 (internal quotation marks omitted). Under the causation rebuttal method, the employer "must 'rule out' the mining-related disease as a cause of the miner's disability." *Epling*, 783 F.3d at 502. The employer cannot satisfy this "rule out" standard by establishing that pneumoconiosis was only a minor cause or one of multiple causes of the miner's impairment; rather, the employer "affirmatively must establish that the miner's disability is attributable exclusively to a cause or causes other than pneumoconiosis." *Bender*, 782 F.3d at 144.

8

Initially, we conclude that Employer's argument that Mrs. Shook carried the burden of proving pneumoconiosis and disability causation is without merit because, as explained, Mrs. Shook was entitled to the 15-year presumption, which shifts the burden to Employer to disprove those elements. Accordingly, it is immaterial whether Dr. Habre's opinion—that dust-exposure was a secondary cause of Shook's respiratory impairment—was sufficient to establish pneumoconiosis and disability causation.

Because Employer does not challenge the ALJ's decision to discredit Dr. Rosenberg's opinion, Employer may only prevail if it can show that Dr. Tuteur's opinion disproved the presence of pneumoconiosis or established that no part of Shook's totally disabling respiratory impairment was caused by pneumoconiosis. We conclude that Employer did not meet that burden. The ALJ permissibly discredited Dr. Tuteur's opinion on the ground that the physician relied exclusively on relative-risk statistics to determine the cause of Shook's totally disabling respiratory impairment. *See Harman Mining Co. v. Dir., Off. of Workers' Comp. Programs*, 678 F.3d 305, 312 (4th Cir. 2012) (concluding that record supported ALJ's decision to discredit physician's opinion when physician "relied heavily on general statistics rather than particularized facts about [the miner]"). And it matters not whether the ALJ discredited Dr. Habre's opinion for the same reason because, even if the ALJ had done so, Employer would still have nothing to rebut the presumption. Indeed, even Dr. Tuteur could not rule out the possibility that coal dust exposure caused at least part of Shook's totally disabling respiratory impairment.

9

III.

Because the ALJ had the authority to adjudicate Mrs. Shook's claims and the ALJ properly concluded that Mrs. Shook was entitled to the 15-year presumption and that Employer failed to rebut that presumption, we deny Employer's petition for review. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*PETITION DENIED*