**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 23-1433**

_____

CONSOL OF KENTUCKY, INC.,

        Petitioner,

    v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR; GEORGE A. DAVIS,

        Respondents.

_____

On Petition for Review of an Order of the Benefits Review Board. (21-0530 BLA)

_____

Submitted:  August 13, 2024                    Decided:  October 24, 2024

_____

Before KING and THACKER, Circuit Judges, and TRAXLER, Senior Circuit Judge.

_____

Petition for review denied by unpublished per curiam opinion.

_____

**ON BRIEF:** William S. Mattingly, JACKSON KELLY PLLC, Lexington, Kentucky, for Petitioner.  Seema Nanda, Solicitor of Labor, Barry H. Joyner, Associate Solicitor, Jennifer L. Jones, Deputy Associate Solicitor, Michael P. Doyle, Counsel for Appellate Litigation, Sarah M. Hurley, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Federal Respondent.  Leah Fugere, Denver, Colorado, Thomas G. Sprankling, Mary Clare Rigali, WILMER CUTLER PICKERING HALE AND DORR LLP, Palo Alto, California, for Respondent George Davis.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Consol of Kentucky, Inc. ("Consol") petitions this court for review of the decision of the Benefits Review Board ("Board") affirming the Administrative Law Judge's ("ALJ") award of benefits to George Davis ("Davis") under the Black Lung Benefits Act, 30 U.S.C. §§ 901-944. We deny the petition for review.

I.

Davis began working in the coal mine industry in approximately 1973. He last worked for Consol in August 1998 and filed this claim for black lung benefits in August 2010.[1] The DOL-sponsored pulmonary evaluation was conducted by Dr. Mahmood Alam in October 2010, with follow-up pulmonary function testing "(PFT")" and review in July 2011. *See* 20 C.F.R. § 725.406(a) (providing that the DOL must provide the miner with "the opportunity to undergo a complete pulmonary evaluation at no expense to the miner."). Dr. Alam continued to treat Davis for his pulmonary and respiratory conditions thereafter.

On October 27, 2011, the District Director issued a proposed decision and order awarding benefits. Consol disagreed with the decision and requested a hearing before an ALJ. Prior to the hearing, however, the ALJ found that the DOL-sponsored evaluation performed by Dr. Alam was insufficient. Although Davis gave good cooperation, he had been physically unable to complete the requisite PFT studies on two different days due to

---

[1] In his claim application, Davis reported that he had filed a prior claim for benefits that was denied. The record of that claim, however, was not in the record before the ALJ and was not considered.

2

coughing, dizziness, and shortness of breath.[2]  Accordingly, the ALJ remanded the claim to the District Director to provide Davis with a complete DOL-sponsored pulmonary evaluation.  *See* 20 C.F.R. § 725.456(e) (providing that, if an ALJ finds that the evaluation does not meet regulatory standards, the ALJ "shall, in his or her discretion, remand the claim to the district director with instructions to develop only such additional evidence as is required, or allow the parties a reasonable time to obtain and submit such evidence, before the termination of the hearing.").

In response, the District Director obtained a letter from Dr. Alam, dated April 7, 2016.  Dr. Alam advised that Davis had been physically unable to complete the required PFTs because he suffers from "cough related syncope" which causes him to pass out when he takes in a deep breath and exhales it quickly.  J.A. 172.  Dr. Alam advised that Davis was "not fit to undergo . . . a full pulmonary function test which require[s] significant effort as well as forceful exhalation from the patient to meet the standard for the computer to accept the PFT."  J.A. 172.  It was his "opinion that doing a PFT will likely cause [Davis] to suffer maybe a significant cardiopulmonary morbidity with collapse and maybe a stroke."  J.A. 172.

---

[2] "A complete pulmonary evaluation includes a report of physical examination, a pulmonary function study, a chest radiograph, and, unless medically contraindicated, a blood gas study."  20 C.F.R. § 725.406(a).  The PFT results "shall be accompanied by three tracings of the flow versus volume and the electronically derived volume versus time tracings."  30 C.F.R. § 718.103(b).  Davis's first attempt yielded unacceptable studies.  The district director scheduled him for repeat PFTs, but Davis was only able to complete one valid test.

A hearing was held on August 2, 2016, before a different ALJ. This ALJ found that Dr. Alam's letter was not consistent with the previous ALJ's order and that a new and complete pulmonary evaluation was required. This examination was conducted by Dr. Vishal Raj on September 17, 2018. Davis was given two opportunities to complete the PFT studies but he was again physically unable to complete them in substantial compliance with the DOL criteria. When returned for the hearing, another ALJ declined Davis's request to remand the claim for further attempts, noting Dr. Alam's concerns about Davis's health and the fact that Davis had other means available to prove his claim. On July 6, 2021, the ALJ issued a decision and order awarding benefits to Davis.

## II.

In order to establish eligibility for black lung benefits, a miner is required to show: "(1) that he has pneumoconiosis, in either its clinical or legal form; (2) that the pneumoconiosis arose out of coal mine employment; (3) that he is totally disabled by a pulmonary or respiratory impairment; and (4) that his pneumoconiosis is a substantially contributing cause of his total disability." *W. Va. CWP Fund v. Bender*, 782 F.3d 129, 133 (4th Cir. 2015) (cleaned up).

In order to prove total disability under the third element, the miner must prove that he

> has a pulmonary or respiratory impairment which, standing alone, prevents or prevented the miner . . . (i) From performing his . . . usual coal mine work; and (ii) From engaging in gainful employment in the immediate area of his . . . residence requiring the skills or abilities comparable to those of any employment in a mine or mines in which he . . . previously engaged with some regularity over a substantial period of time.

4

20 C.F.R. § 718.204(b)(1).

Total disability resulting from a pulmonary or respiratory impairment may be established by (1) qualifying pulmonary function tests, *see id.* § 718.204(b)(2)(i); (2) qualifying arterial blood-gas tests, *see id* § 718.204(b)(2)(ii); or (3) evidence that the miner has pneumoconiosis and is "suffering from cor pulmonale with right-sided congestive heart failure," *id.* § 718.204(b)(2)(iii). But "[w]here total disability cannot be shown" via such medical evidence, or "where pulmonary function tests and/or blood gas studies are medically contraindicated, total disability may nevertheless be found if a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques, concludes that a miner's respiratory or pulmonary condition prevents or prevented the miner from engaging in employment as described in paragraph (b)(1) of this section." *Id.* § 718.204(b)(2)(iv).

The fourth element requires proof that the miner's "pneumoconiosis is a substantially contributing cause of his total disability." *Bender*, 782 F.3d at 133. But if the miner proves he was employed in underground coal mines or in substantially similar conditions for at least 15 years, his chest x-ray is interpreted as negative for complicated pneumoconiosis, and he has a totally disabling respiratory or pulmonary impairment, he is entitled to a rebuttable presumption that he is totally disabled due to his pneumoconiosis. *See* 20 C.F.R. § 718.305(b)(1).

III.

A.

5

At the time of his hearing, Davis was found to have 25.45 years of qualifying coal mine work. He has no prior history of smoking. His usual coal mine employment "required heavy to very heavy work, with a significant portion of his work day involving crawling." J.A. 269. As noted above, he was physically unable to complete PFT studies to the requisite DOL specifications and, therefore, could not establish total disability under 20 C.F.R. § 718.204(b)(2)(i). He had no qualifying arterial blood-gas tests. *See id.* § 718.204(b)(2)(ii). Nor did he suffer from cor pulmonale with right-sided congestive heart failure. *See id.* at § 718.204(b)(2)(iii). Accordingly, the ALJ considered whether "a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques, conclude[d] that [Davis's] respiratory or pulmonary condition prevents or prevented" him from performing his usual coal mine work or comparable work. *Id.* § 718.204(b)(2)(iv).

After weighing the competing medical opinions, the ALJ found that Davis had met this burden via the treatment records and opinions of his treating physician, Dr. Alam. Dr. Alam diagnosed Davis with coal workers' pneumoconiosis (CWP), severe chronic obstructive pulmonary disease (COPD), and emphysema related to his legal CWP. He observed that Davis had never smoked and that, despite treatment, he had experienced progressive worsening of his lung function since he left the mines. The symptoms associated with his CWP included a productive cough, dyspnea, pleuritic pain, and inspiratory wheezing. Plaintiff had been prescribed numerous medications for his respiratory symptoms over the years, including inhalers, nebulizers, rotating antibiotics, as well as oxygen to relieve his symptoms.

6

Based upon Davis's "clinical history of 25 years of coal mining, his [positive] x-ray finding and his chronic symptoms of sputum production with bronchitis," Dr. Alam diagnosed Davis with "clinical and legal pneumoconiosis."[3] J.A. 172.  Based upon Davis's symptomology and clinical presentation, Dr. Alam further opined that Davis was "disabled from [a] pulmonary standpoint of view because of his chronic pulmonary symptoms of cough, sputum production, shortness of breath, positive x-ray finding, work history and his maximum treatment," further noting that Davis "ha[d] no other lung insult causing him to suffer from this disease."  J.A. 172.

Dr. Raj, who conducted the second DOL-sponsored evaluation on January 20, 2018, also diagnosed Davis with clinical pneumoconiosis due to his abnormal chest x-ray findings, and legal pneumoconiosis due to his history of exposure, possible COPD, pulmonary symptoms, and abnormal PFT result which, although not qualifying under DOL standards, were suggestive of a possibly very severe obstructive defect.  Although

---

[3] Clinical pneumoconiosis is defined, in relevant part, as "those diseases recognized by the medical community as pneumoconiosis, i.e., the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment."  20 C.F.R. § 718.201(a)(1); *see also American Energy, LLC v. Dir., OWCP*, 106 F.4th 319, 325 (4th Cir. 2024).  Legal pneumoconiosis is defined as "any chronic lung disease or impairment and its sequelae arising out of coal mine employment," which includes "any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment."  20 C.F.R. § 718.201(a)(2).  "Legal pneumoconiosis does not require evidence of particles in the miner's lungs, but the miner must still show that his lung disease (such as chronic obstructive pulmonary disease, or "COPD") arose out of coal mine employment."  *American Energy*, 106 F.4th at 325.  A miner who establishes "legal pneumoconiosis necessarily satisfies th[e] second element" because, "by definition, legal pneumoconiosis arises out of coal mine employment."  *Id.*

7

confident that Davis had a pulmonary impairment based on these factors, Dr. Raj declined to make a decision regarding patient disability because the PFTs did not meet the DOL standards.

Consol submitted the opinions of Dr. Thomas Jarboe and Dr. A. Dahhan, both of whom acknowledged Davis's respiratory and pulmonary symptoms and lack of any history of smoking, but opined that Davis was not totally disabled due to a pulmonary condition attributable to coal workers' pneumoconiosis. Both physicians felt that the x-ray evidence was insufficient to substantiate the presence of clinical pneumoconiosis. Dr. Jarboe opined that the medical evidence did not support the presence of legal pneumoconiosis because there were "no valid pulmonary function studies available to assess the presence of either restrictive and/or obstructive lung disease, J.A. 15, and similarly ruled out total disability "because no valid functional studies are available." J.A. 17. Dr. Dahhan likewise found insufficient evidence of legal pneumoconiosis or total disability from a respiratory standpoint due to the absence of qualifying PFTs or arterial blood-gas tests ("ABGs).

As noted by the ALJ, "[a] traditional discussion of the issue of total disability [was] hampered in this case by the lack of a valid PFT since 2004; thus, an objective measure of Claimant's current respiratory or pulmonary function on the basis of a valid PFT [was] not available." J.A. 295. But, as noted above, total disability may be established by any one of four types of medical evidence—qualifying PFTs; qualifying ABGs; cor pulmonale with right-sided congestive heart failure; *see* 20 C.F.R. § 718.204(b)(2)(i)-(iii), *or* evidence that "a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques, concludes that a miner's respiratory or pulmonary

8

condition prevents or prevented the miner from engaging in" his prior coal mine or comparable employment, *id.* § 718.204(b)(2)(iv).

The ALJ found that the medical report and treatment notes of Dr. Alam reflected a reasoned medical judgment based upon medically acceptable clinical and laboratory diagnostic techniques and were sufficient to establish that Davis was indeed totally disabled, from a pulmonary or respiratory standpoint, from returning to his prior coal mining job or comparable employment, notwithstanding the absence of a PFT or ABG that met DOT requirements. The ALJ further relied upon Dr. Alam's status as Davis's longtime treating pulmonary physician and found that his opinion was worthy of controlling weight. *See* 20 C.F.R. § 718.104(d) (The ALJ "must give consideration to the relationship between the miner and any treating physician whose report is admitted into the record," considering the nature and duration of the relationship and the frequency and extent of treatment.); *id.* § 718.104(d)(5) ("In appropriate cases, the relationship between the miner and his treating physician may constitute substantial evidence in support of the [ALJ's] decision to give that physician's opinion controlling weight, provided that the weight given to the opinion of the miner's treating physician shall also be based on the credibility of the physician's opinion in light of its reasoning and documentation, other relevant evidence and the record as a whole."). Specifically, the ALJ found that:

> Dr. Alam has been [Davis's] treating pulmonary physician seeing him on a frequent basis since 2011. Dr. Alam's treatment notes document [Davis's] ongoing report of respiratory symptoms associated with both COPD and CWP and that even activities of daily living aggravated his symptoms of COPD. While Dr. Alam did not expound on his statement regarding "maximum treatment" in his 2016 report and how it indicates the presence of a disabling pulmonary impairment, Dr. Alam's treatment notes document

9

> [Davis's] need for the increased prescription of pulmonary medications through the years, beginning with two medications and expanding to five and six medications, including the use of an antibiotic on a rotating basis. It is reasonable to infer that the need for pulmonary medication at all, let alone what [Davis's] physician considers "maximal treatment," that [Davis] would not be capable of performing the heavy to very heavy labor and crawling required of his usual coal mine job. I find Dr. Alam's report and treatment notes sufficient to establish total disability notwithstanding the absence of a valid PFT since 2004 or evidence of an ABG abnormality. I further find Dr. Alam's status as [Davis's] longtime treating pulmonary physician entitles his opinion to controlling weight.

J.A. 297-98 (footnote omitted).

Turning to the contrary opinions of Drs. Jarboe and Dahhan, the ALJ observed that they had concluded that Davis was not totally disabled from a respiratory or pulmonary standpoint from legal pneumoconiosis based primarily upon the absence of qualifying PFTs and ABGs. Moreover, the physicians had conflated the issues of total disability and disability causation. Specifically, they focused primarily on whether Davis's pulmonary condition was related to his coal mine employment as opposed to whether Davis's pulmonary condition rendered him unable to perform the heavy labor associated with his usual coal mine job.[4]

Having weighed all of the medical evidence relevant to the issue of total disability, the ALJ found that the preponderance of that evidence established that Davis was totally disabled from a respiratory or pulmonary standpoint within the meaning of 20 C.F.R. § 718.204(b). As a result of his 25+ years of qualifying coal mine employment, Davis was

---

[4] The ALJ declined to rely upon the opinion of Dr. Raj on the issue of total disability because Dr. Raj declined to confirm or reject total disability from a respiratory standpoint due to the absence of qualifying PFTs or ABGs.

therefore entitled to the presumption that his pneumoconiosis was a substantially contributing cause of his total disability. *See* 20 C.F.R. § 718.305. The ALJ found that the opinions of Drs. Jarboe and Dahhan were not well reasoned and that Consol had failed to rebut the presumption as to legal pneumoconiosis.[5]

On petition for review filed by Consol, the Board affirmed. The Board found that the ALJ's decision was supported by substantial evidence because Dr. Alam considered the objective testing evidence and explained why the symptoms and treatment rendered the miner unable to work. The contrary medical opinions were not persuasive because the physicians had conflated disability and disability causation and failed to address whether Davis was disabled regardless of the non-qualifying objective tests.

B.

On appeal, Consol again argues that the ALJ erroneously credited the opinion of Davis's treating physician that Davis was totally disabled by a pulmonary or respiratory impairment and erroneously discredited the contrary opinions of Consol's medical experts. We are unpersuaded.

First, "it is the province of the ALJ to evaluate the physicians' opinions. As the trier of fact, the ALJ is not bound to accept the opinion or theory of any medical expert." *Island Creek Coal Co. v. Compton*, 211 F.3d 203, 211 (4th Cir. 2000) (cleaned up). Rather, the "ALJ must examine the reasoning employed in a medical opinion in light of the objective

---

[5] After considering the conflicting medical interpretations of Davis's x-ray, the ALJ found that Consol had rebutted the evidence of clinical pneumoconiosis, but not the evidence of legal pneumoconiosis.

11

material supporting that opinion, and also must take into account any contrary test results or diagnoses." *Id.*

Second, our review of an ALJ decision that the BRB has affirmed is "highly deferential." *W. Va. CWP Fund v. Dir., Off. Of Workers' Comp. Programs*, 880 F.3d 691, 697 (4th Cir. 2018). Our review is limited to considering "whether substantial evidence supports the factual findings of the ALJ and whether the legal conclusions of the Board and ALJ are rational and consistent with applicable law." *Id*. (cleaned up). "To determine whether this standard has been met, we consider whether all of the relevant evidence has been analyzed and whether the ALJ has sufficiently explained [her] rationale in crediting [or discrediting] certain evidence." *Hobet Mining, LLC v. Epling*, 783 F.3d 498, 504 (4th Cir. 2015) (cleaned up). We defer to the ALJ's evaluation of the medical records and, "[s]o long as [the] ALJ's findings in this regard are supported by substantial evidence, they must be sustained." *Id.* "[W]e do not undertake to reweigh contradictory medical evidence, make credibility determinations, or substitute our judgment for that [of the ALJ]." *Sea "B" Mining v. Addison*, 831 F.3d 244, 252 (4th Cir. 2016). "[T]he duty to resolve conflicts in the evidence rests with the ALJ as factfinder. And when conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled or has pneumoconiosis, the responsibility for that decision falls on the ALJ." *Id.*

We have reviewed the ALJ's decision and the medical records and conclude that the ALJ carefully considered and analyzed the relevant medical evidence, including the contrary diagnoses, sufficiently explained his rationale, and permissibly credited the opinion of Dr. Alam over the contrary opinions of Drs. Jarboe and Dahhan. The ALJ's

findings are supported by substantial evidence and Consol's arguments largely amount to a disagreement with the ALJ's weighing of the evidence—a decision we leave to the ALJ. We likewise find no error in the ALJ's determination that Consol failed to rebut the presumption of total disability.

IV.

Consol next argues that its liability for black lung benefits should be transferred to the Black Lung Disability Trust Fund due to the time period that elapsed between the filing of Davis's claim in August 2010 and the ALJ's ultimate award of benefits in July 2021. More specifically, Consol argues that a full and fair hearing was not afforded at a reasonable time and that, had the Director timely provided a complete pulmonary examination to Davis, Consol might not have been found liable for benefits. The Board rejected Consol's due process argument because Consol had at all times been afforded notice and opportunity to respond to the claim, including the opportunity to address all interim requests and remands that occurred due to Davis's inability to complete PFTs in accordance with DOL criteria. And the Board rejected, as speculative, Consol's argument that it might not have been found liable if the examinations had been provided more quickly. We find no error.

Under the Black Lung Act, the DOL was required to provide Davis with "the opportunity to undergo a complete pulmonary evaluation at no expense to the miner." 20 C.F.R. § 725.406(a). The evaluation must include "a report of physical examination, a pulmonary function study, a chest radiograph, and, unless medically contraindicated, a blood gas study." *Id.* The district director was also required to schedule the miner for

13

additional examination and testing if the examination or testing is not "in substantial compliance" with the regulations. *Id.* § 725.406(c). And if an ALJ concludes that the evaluation fails to comply with the regulatory standards, the ALJ "shall, in his or her discretion, remand the claim to the district director" for further evaluation. 20 C.F.R. § 725.456(e).

This is what occurred in this case. The District Director provided Davis with a DOL-sponsored evaluation. When Davis was unable to complete the PFTs, the District Director arranged for him to try again. He was again unable to do so. The District Director then made the decision to award benefits, after which a hearing was requested by Consol. The claim was then twice remanded to the Director by two separate ALJs for another DOL-sponsored evaluation. When Dr. Raj conducted the second DOL-sponsored evaluation, Davis was again physically unable to complete the requisite studies despite his good-faith effort and cooperation, prompting Davis to file a request for another remand to try again to prove his total disability via qualifying PFT results. Ultimately, a third ALJ determined, based upon the multiple unsuccessful attempts and Dr. Alam's concerns that such attempts posed a grave danger to Davis's health, that further efforts should not be undertaken, in part because Davis had the opportunity to prove his total disability through a reasoned medical opinion. In addition, we note that portions of the underlying proceedings on the claim took place during the COVID-19 pandemic, which further delayed a final decision.

To be sure, the delay between the filing of the claim and its resolution before the ALJ was substantial. But, at the end of the day, Consol was involved at every stage of the process and was given a full and fair opportunity to evaluate Davis's medical conditions

14

and respond to his evidence. And, of course, the end result was that Davis was *unable* to prove his claim for benefits based on PFTs and was left with the sole path to proving that he was totally disabled from returning to his heavy to very heavy prior work through the documentation of his coal mining history, his medical history, his progressive pulmonary symptomology, and the reasoned medical opinion of his treating physician. Accordingly, we agree with the Board's determination that Consol failed to prove a due process violation or that liability should otherwise be transferred to the Trust Fund.

V.

For the foregoing reasons, we conclude that the ALJ's and BRB's decisions are based upon substantial evidence and are without reversible error. Accordingly, we deny the petition for review. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*PETITION DENIED*