**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-1738**

HOBET MINING, LLC,

　　　　　　Petitioner,

　　　v.

CARL R. EPLING, JR.; DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,

　　　　　　Respondents.

On Petition for Review of an Order of the Benefits Review Board.
(12-0404-BLA; 12-0404-A-BLA)

Argued: January 29, 2015　　　　　Decided: April 17, 2015

Before KEENAN, FLOYD, and HARRIS, Circuit Judges.

Petition for review denied by published opinion. Judge Harris
wrote the opinion, in which Judge Keenan and Judge Floyd joined.

**ARGUED:** William Steele Mattingly, JACKSON KELLY PLLC,
Morgantown, West Virginia, for Petitioner. Sean Gregory
Bajkowski, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C.;
Leonard Joseph Stayton, Inez, Kentucky, for Respondents. **ON
BRIEF:** Ashley M. Harman, JACKSON KELLY PLLC, for Petitioner.
M. Patricia Smith, Solicitor of Labor, Rae Ellen James,
Associate Solicitor, Gary K. Stearman, Counsel for Appellate
Litigation, Sarah M. Hurley, Office of the Solicitor, UNITED
STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent
Director, Office of Workers' Compensation Programs, United
States Department of Labor.

PAMELA HARRIS, Circuit Judge:

Hobet Mining, LLC ("Hobet") petitions for review of a decision awarding black lung benefits to Carl R. Epling, Jr. ("Epling"). The administrative law judge ("ALJ") found that Epling was entitled to the benefit of the so-called "fifteen-year presumption," a statutory provision that presumes eligibility for benefits when a claimant suffers from a totally disabling respiratory or pulmonary impairment and has fifteen years of qualifying coal mine employment. See 30 U.S.C. § 921(c)(4). Because Hobet had failed to rebut that presumption, the ALJ concluded, Epling was entitled to benefits. We find that the ALJ's determinations were supported by substantial evidence, and we therefore deny the petition for review.

**I.**

**A.**

The Black Lung Benefits Act ("Act") provides benefits to "coal miners who are totally disabled due to pneumoconiosis," popularly known as black lung disease. 30 U.S.C. § 901(a). To prove entitlement to black lung benefits in the absence of the fifteen-year presumption, an individual must show that he has

2

pneumoconiosis arising from coal mine employment,[1] and that this disease is a substantially contributing cause of his totally disabling respiratory or pulmonary impairment.  See Mingo Logan Coal Co. v. Owens, 724 F.3d 550, 555 (4th Cir. 2013).[2]

"[T]he existence and causes of pneumoconiosis are difficult to determine," and Congress accordingly has "established a number of evidentiary presumptions to assist miners in proving their claims."  Broyles v. Dir., Office of Workers' Comp. Programs, 824 F.2d 327, 328 (4th Cir. 1987).  Among them is the fifteen-year presumption at issue in this case, 30 U.S.C. § 921(c)(4), which was enacted in 1972, eliminated in 1981, and then restored in 2010.[3]  The fifteen-year presumption is

---

[1]  Since the 1978 amendments to the Act, the statutory definition of "pneumoconiosis" has encompassed not only the diseases medically known as pneumoconiosis, but also any chronic lung disease or impairment arising from coal mine employment, as well as the impairments that result from any such disease.  See 30 U.S.C. § 902(b); 20 C.F.R. § 718.201(a).

[2]  In some cases, we have further subdivided these elements of a black lung claim into four separate components.  See Mingo Logan, 724 F.3d at 555 (a claimant must show (1) that he has pneumoconiosis; (2) that his pneumoconiosis arises from coal mining employment; (3) that he is totally disabled by a respiratory or pulmonary impairment; and (4) that pneumoconiosis is a substantially contributing cause of his disability).  However the elements are counted, the substance of the claim is the same.

[3]  Black Lung Benefits Act of 1972, Pub. L. No. 92-303, § 4(c), 86 Stat. 150, 154 (1972); Black Lung Revenue Act of 1981, Pub. L. No. 97-119, § 202(b)(1), 95 Stat. 1635, 1643

expressly intended to "[r]elax" the "often insurmountable burden" of proving a black lung claim for the special class of "miners with 15 years experience who are disabled by a respiratory or pulmonary impairment." S. Rep. 92-743 (1972), reprinted in 1972 U.S.C.C.A.N. 2305, 2306. Through the presumption, Congress has "singled out" this group of miners for "special treatment," making it easier for them to show their entitlement to benefits. Regulations Implementing the Byrd Amendments to the Black Lung Benefits Act: Determining Coal Miners' and Survivors' Entitlement to Benefits, 78 Fed. Reg. 59102, 59105-07 (Sept. 25, 2013); see also West Virginia CWP Fund v. Bender, — F.3d — , No. 12-2034, slip op. at 23 (4th Cir. Apr. 2, 2015).

To that end, § 921(c)(4) provides that,

> if a miner was employed for fifteen years or more in one or more underground coal mines, . . . and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis.

Under the presumption, if a claimant has at least fifteen years of underground coal mine employment and a qualifying respiratory or pulmonary disability, a rebuttable presumption arises that he

---

(1981); Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 1556, 124 Stat. 119, 260 (2010).

is entitled to benefits.  In other words, we presume both prongs of the showing required for benefits eligibility: that the claimant has pneumoconiosis arising from coal mine employment, and that this disease is a substantially contributing cause of his disability.  See Mingo Logan, 724 F.3d at 555.

A coal mine operator may defeat the miner's claim by rebutting either of these presumptions.  First, an operator may establish that the miner does not have pneumoconiosis arising from coal mine employment.  20 C.F.R. § 718.305(d)(1)(i). Second, the operator may establish that "no part" of the miner's disability was caused by such a disease, id. § 718.305(d)(1)(ii), a standard under which it must "rule out" the mining-related disease as a cause of the miner's disability, Bender, slip op. at 8; Rose v. Clinchfield Coal Co., 614 F.2d 936, 939 (4th Cir. 1980).

**B.**

After working for over twenty-one years in underground coal mines — most recently for petitioner Hobet in 1999 — respondent Epling is unable to exert himself at all without experiencing shortness of breath.  Because this impairment prevents Epling from performing his previous coal mine employment, which required heavy manual labor, it constitutes a totally disabling respiratory impairment for purposes of the Act.

Epling filed this claim for benefits under the Act in 2007. Due to Epling's long history of coal mine employment and totally disabling respiratory impairment, the ALJ reviewing his claim applied the fifteen-year presumption, reinstated in 2010 while Epling's case was pending. As required by that provision, the ALJ presumed both (1) that Epling has pneumoconiosis arising from coal mine employment, and (2) that Epling's pneumoconiosis is a cause of his disabling respiratory impairment. Together, those presumptions qualify Epling for benefits, absent rebuttal by Hobet.

On the first presumption — the existence of pneumoconiosis arising from coal mine employment — the ALJ found that Epling does indeed have pneumoconiosis arising from his coal mine employment. Hobet does not contest that finding on appeal. Accordingly, only the second presumption — that Epling's pneumoconiosis is a cause of his disability — is at issue here.

To rebut that disability-causation presumption, Hobet presented the ALJ with testimony from two doctors, Dr. Robert J. Crisalli ("Crisalli") and Dr. Kirk Hippensteel ("Hippensteel"). The ALJ discredited Crisalli's testimony in a finding that Hobet does not challenge on appeal, and Hobet now relies entirely on Hippensteel's opinion, set forth in a number of submissions over the course of this litigation.

Critically, in submissions made between 2008 and 2011, Hippensteel was unpersuaded that Epling suffered from pneumoconiosis at all, though he conceded that the evidence was not unequivocal. As the ALJ explained, after reviewing chest CT scans, Hippensteel believed "that the evidence did not indicate pneumoconiosis." J.A. 80. In this key respect, Hippensteel's opinion was directly contrary to the ALJ's finding that Epling did have pneumoconiosis arising from coal mine employment.

Hippensteel attributed Epling's respiratory impairments not to pneumoconiosis but instead entirely to obesity and sleep apnea. Hippensteel acknowledged abnormalities in Epling's x-rays. He believed, however, that it would be "unusual" for Epling to have developed pneumoconiosis over ten years after he left work in the coal mines. See J.A. 89. And in light of the evidence against pneumoconiosis, he reasoned, it followed that the abnormalities were the result of the obesity and sleep apnea.

At the same time, Hippensteel asserted that even if, hypothetically, Epling did have pneumoconiosis arising from coal mine employment, that disease would not be the cause of his impairment. By way of explanation, Hippensteel offered only his agreement with the views of Crisalli, the now-discredited expert, reciting Crisalli's opinion as to the cause of Epling's gas exchange impairment.

In February of 2012, upon review of additional CT scans, Hippensteel's diagnostic opinion changed, and he concluded that Epling did indeed suffer from pneumoconiosis arising from coal mine employment. But Hippensteel did not revisit his causation analysis in light of this new finding. Instead, he simply recited again his prior conclusion that Epling's respiratory problems were not caused by pneumoconiosis.

Reviewing this evidence, the ALJ made the determination — central to this appeal — that Hippensteel's opinion that pneumoconiosis did not cause Epling's disability was entitled to "little weight" because (1) the doctor had failed to diagnose pneumoconiosis, in direct contradiction to the ALJ's own finding; and (2) Hippensteel's position "that it would be unusual for [Epling] to have pneumoconiosis ten years after he ended his coal mine employment" was "not in accord with the accepted view that [coal workers' pneumoconiosis] is both latent and progressive." J.A. 89; see also J.A. 98. Having discounted that key testimony, the ALJ went on to find that Hobet could not rebut the presumption that Epling's pneumoconiosis is a cause of his disability, and awarded benefits to Epling.

The Benefits Review Board ("Board") affirmed the ALJ's decision. On the weight to be given Hippensteel's opinion, the Board, citing Scott v. Mason Coal Co., 289 F.3d 263 (4th Cir. 2002), invoked the well-established rule discrediting causation

8

testimony by a doctor who fails to diagnose pneumoconiosis when, as here, an ALJ has made a contrary finding. In such cases, a doctor's opinion as to causation may not be credited at all unless there are "'specific and persuasive reasons'" for concluding that the doctor's view on causation is independent of his or her mistaken belief that the claimant does not have pneumoconiosis, in which case it may be assigned, at most, "little weight." Scott, 289 F.3d at 269-70 (quoting Toler v. E. Associated Coal Co., 43 F.3d 109, 116 (4th Cir. 1995)).

Applying that standard, the Board held that the ALJ had "rationally discounted" Hippensteel's opinion. J.A. 98. Hippensteel's failure to diagnose pneumoconiosis could not be salvaged, the Board explained, by his hypothetical "assumption of the existence" of pneumoconiosis in deposition testimony. J.A. 99. And though Hippensteel ultimately accepted the diagnosis of pneumoconiosis in 2012, the Board reasoned, all of his discussion of his causation opinion predated that change of mind, and was coupled with his former unwillingness to diagnose pneumoconiosis. The Board therefore affirmed the ALJ's findings as to causation and the award of benefits to Epling.

Hobet timely filed this petition for review, arguing that the ALJ and the Board improperly discredited Hippensteel's

opinion regarding the cause of Epling's disability.[4]   For the

reasons that follow, we disagree.


**II.**

**A.**

Our review of a decision awarding black lung benefits is

"limited."  Harman Mining Co. v. Dir., Office of Workers' Comp.

Programs, 678 F.3d 305, 310 (4th Cir. 2012).  We ask only

"whether substantial evidence supports the factual findings of

the ALJ and whether the legal conclusions of the [Board] and ALJ

are rational and consistent with applicable law."  Id.

To determine whether this standard has been met, we

consider "whether all of the relevant evidence has been analyzed

and whether the ALJ has sufficiently explained his rationale in

crediting certain evidence."  Mingo Logan, 724 F.3d at 557.  But

it is for the ALJ, as the trier of fact, to make factual and

---

[4] Hobet also argues that the ALJ and Board erred by holding its rebuttal evidence on causation to the rule-out standard of 20 C.F.R. § 718.305(d)(1).  According to Hobet, the rule-out standard is unduly strict and inconsistent with the Act, which must be read to allow rebuttal by a showing that pneumoconiosis is not a "substantially contributing" cause of a claimant's disability.  Because we conclude that Hippensteel's opinion was properly discredited, leaving Hobet with insufficient rebuttal evidence under either standard, resolution of that issue is not dispositive here.  We note, however, that the same challenge to the rule-out standard was addressed and rejected by our recent decision in West Virginia CWP Fund v. Bender, — F.3d —, No. 12-2034, slip op. at 28-29 (4th Cir. Apr. 2, 2015).

credibility determinations, see id., and we therefore "defer to the ALJ's evaluation of the proper weight to accord conflicting medical opinions," Harman, 678 F.3d at 310. So long as an ALJ's findings in this regard are supported by substantial evidence, they must be sustained. See id.

**B.**

The question in this appeal is whether Hippensteel's opinion regarding the cause of Epling's disability was properly discredited. In particular, we consider whether the ALJ and the Board erred by discrediting Hippensteel's causation analysis on the basis of his failure to diagnose pneumoconiosis arising from coal mine employment.

As the Board recognized, we are not writing on a clean slate. Long-standing precedent establishes that a medical opinion premised on an erroneous finding that a claimant does not suffer from pneumoconiosis is "not worthy of much, if any, weight," particularly with respect to whether a claimant's disability was caused by that disease. Grigg v. Dir., Office of Workers' Comp. Programs, 28 F.3d 416, 419 (4th Cir. 1994). This is a common-sense rule, for the credibility of a doctor's judgment as to whether pneumoconiosis is a cause of a miner's disability is necessarily influenced by the accuracy of his underlying diagnosis, which lies at the heart of any claim for black lung benefits. See Toler, 43 F.3d at 116. "It is usually

11

exceedingly difficult for a doctor to properly assess the contribution, if any, of pneumoconiosis to a miner's death [or disability] if [the doctor] does not believe [pneumoconiosis] was present." Soubik v. Dir., Office of Workers' Comp. Programs, 366 F.3d 226, 234 (3d Cir. 2004).

Thus, opinions that erroneously fail to diagnose pneumoconiosis may not be credited at all, unless an ALJ is able to "identify specific and persuasive reasons for concluding that the doctor's judgment on the question of disability causation does not rest upon" the "predicate[]" misdiagnosis. Toler, 43 F.3d at 116 (vacating ALJ finding on disability causation where ALJ relied upon the opinions of doctors who erroneously failed to diagnose pneumoconiosis); see also Scott, 289 F.3d at 269-70 (same). And even when those opinions are credited, they may carry only "little weight" in the decision-maker's causation analysis. Scott, 289 F.3d at 269 (even if there were specific and persuasive reasons to credit opinions failing to diagnose pneumoconiosis, ALJ impermissibly "accorded those opinions far more than the little weight they are allowed").

In this case, we agree with the Board that Hippensteel's opinion was entitled to no more than the "little weight" assigned it by the ALJ. First and most critically, Hippensteel failed to diagnose Epling's pneumoconiosis, directly contrary to the finding of the ALJ. Under cases like Scott and Toler, that

12

failure, by itself, would bar the ALJ from giving Hippensteel's opinion as to disability causation anything more than the "little weight" he accorded it. See Scott, 289 F.3d at 269-70; Toler, 43 F.3d at 116.

Moreover, this is not a case in which there are "specific and persuasive reasons" for thinking that a doctor's view of disability causation is independent from any misdiagnosis. See Toler, 43 F.3d at 116. On the contrary, substantial evidence supports the conclusion that Hippensteel's disability-causation opinion was closely tied to his belief that Epling did not suffer from pneumoconiosis arising from coal mine employment. Indeed, Hippensteel himself explained that it was because the evidence in the record did not substantiate a diagnosis of pneumoconiosis that he attributed the irregularities in Epling's x-rays to obesity and sleep apnea instead. That reasoning is irreconcilable with the ALJ's conclusion that Epling does in fact have pneumoconiosis. See id. at 115 (finding it difficult "to understand how the ALJ could credit" the causation analysis of doctors who failed to diagnose pneumoconiosis "while simultaneously finding that [the claimant] did suffer from pneumoconiosis"). And it leaves no space between Hippensteel's failure to diagnose pneumoconiosis and his assessment that pneumoconiosis was not a cause of Epling's disability. Under those circumstances, the ALJ properly discredited Hippensteel's

13

opinion.  See id. at 116 (ALJ "may not credit" doctor's opinion on causation absent "specific and persuasive" showing that it is not linked to an erroneous failure to diagnose pneumoconiosis).

Hobet argues that Hippensteel salvaged the credibility of his causation opinion when he asserted that he would have reached the same conclusion even assuming that Epling did have pneumoconiosis.  We disagree.  A medical expert of course may opine credibly as to disability causation under an alternative set of circumstances.  See, e.g., Island Creek Coal Co. v. Compton, 211 F.3d 203, 214 (4th Cir. 2000).  But as we have held, it is not enough for the expert simply to recite, without more, that his causation opinion would not change if the claimant had pneumoconiosis.  See Scott, 289 F.3d at 268-69. Rather, such an alternative causation analysis, like any causation opinion, must be accompanied by some reasoned explanation — in this context, an explanation of why the expert would continue to believe that pneumoconiosis was not the cause of a miner's disability, even if pneumoconiosis were present.

That is what is missing in this case:  Hippensteel does not provide any independent analysis of the factors that would lead him to attribute Epling's impairment to obesity and sleep apnea even if the factual premise for his opinion — that Epling does not have pneumoconiosis — were overridden.  Instead, he simply endorses and paraphrases Crisalli's view of the gas exchange

14

evidence — a view that was itself discredited by the ALJ. Repetition of another expert's discredited analysis does nothing to enhance the credibility of Hippensteel's own views, and it does not constitute the reasoned explanation necessary to support an alternative causation analysis. And without such an explanation, Hippensteel's alternative opinion is just a "superficial hypothetical" that cannot be reconciled with the existence of the mining-related pneumoconiosis found by the ALJ. Soubik, 366 F.3d at 234 (quotation marks omitted).

Nor is Hippensteel's opinion as to causation rendered sound by his late-breaking determination, in 2012, that Epling does in fact have pneumoconiosis. As the Board explained, the entirety of Hippensteel's causation reasoning predates his ultimate diagnosis of pneumoconiosis and, as discussed, rests primarily on the absence of that disease. At no point after diagnosing pneumoconiosis did Hippensteel revisit his earlier opinion to take into account the elimination of what had been the factual predicate for his view. So again, the ALJ was left without any explanation, in reports or testimony, of how Hippensteel might be able to reach the same conclusion regarding the cause of Epling's disability in light of his changed opinion regarding Epling's diagnosis. Absent that explanation, Hippensteel's 2012 restatement of his causation opinion was no more credible than its earlier iterations, and the ALJ permissibly discounted it.

15

In short, Hippensteel's initial failure to diagnose pneumoconiosis was cured neither by his hypothetical assumption of pneumoconiosis nor by his subsequent embrace of that diagnosis. Even standing alone, this defect would have justified the ALJ's credibility determination. See Scott, 289 F.3d at 269-70. But in this case, Hippensteel's failure to diagnose pneumoconiosis did not stand alone. Instead, it came with the doctor's testimony that it would be unusual for Epling to have developed pneumoconiosis over ten years after he left work in the coal mines — a judgment, the ALJ explained, that is "not in accord with the accepted view that [coal workers' pneumoconiosis] is both latent and progressive." J.A. 89. The ALJ was entitled to take this disagreement, too, into account in "evaluat[ing] . . . the proper weight to accord [the] conflicting medical opinions" at issue in this case, Harman, 678 F.3d at 311 (quoting Stiltner v. Island Creek Coal Co., 86 F.3d 337, 342 (4th Cir. 1996)), further bolstering his decision to discount Hippensteel's opinion. When these grounds for discrediting Hippensteel's causation opinion are taken together, they undoubtedly provide the substantial evidence necessary to affirm on appeal the ALJ's finding that Hobet had failed to rebut the fifteen-year presumption. See id. at 310.

16

## III.

For the foregoing reasons, we deny the petition for review.

<u>PETITION FOR REVIEW DENIED</u>