**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-1063

CEDAR COAL COMPANY,

       Petitioner,

    v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR; KAREN VENA MULLINS, on behalf of the Estate of Roger L. Mullins,

       Respondents.

On Petition for Review of an Order of the Benefits Review Board.   (22-0539-BLA)

Argued:  January 30, 2026                    Decided:  March 6, 2026

Before THACKER and RICHARDSON, Circuit Judges, and KEENAN, Senior Circuit Judge.

Denied by published opinion.  Judge Thacker wrote the opinion, in which Judge Richardson and Judge Keenan joined.

**ARGUED:**  Michael A. Kawash, ROBINSON & MCELWEE, PLLC, Charleston, West Virginia, for Petitioner.  Samuel Brown Petsonk, PETSONK PLLC, Oak Hill, West Virginia; Jeffrey Steven Goldberg, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondents.  **ON BRIEF:**  Mark J. Grigoraci, ROBINSON & MCELWEE, PLLC, Charleston, West Virginia, for Petitioner.  Seema Nanda, Solicitor of Labor, Barry H. Joyner, Associate Solicitor, Jennifer Feldman Jones, Deputy Associate

Solicitor, Michael P. Doyle, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Federal Respondent.  Bren J. Pomponio, MOUNTAIN STATE JUSTICE, INC., Charleston, West Virginia, for Respondent Roger L. Mullins.

———————

THACKER, Circuit Judge:

Roger Mullins filed the instant claim for Black Lung benefits on December 12, 2012, alleging that he was totally disabled due to pulmonary disease caused by coal dust. After his claim was denied, Mullins filed a request for modification in 2019, in which he alleged that the earlier Administrative Law Judge ("ALJ") had made a mistake of fact and that there had been a change in conditions. After a hearing, the ALJ granted Mullins' request for modification, found him totally disabled due to legal pneumoconiosis, and awarded black lung benefits. Cedar Coal Company ("Petitioner"), Mullins' last coal mine employer who was ordered responsible for paying benefits, appealed the ALJ's order to the Benefits Review Board ("BRB"), which affirmed the award of benefits.

In this Petition for Review, Petitioner argues that the ALJ's award of benefits should be vacated because Mullins presented affirmative evidence in excess of the regulatory limitations, and because the ALJ's finding of legal pneumoconiosis was not supported by substantial evidence. We disagree with both contentions and deny the petition for review.

I.

A.

For context, we begin with a brief discussion of the statutory and regulatory framework. The Black Lung Benefits Act creates an adversarial administrative procedure designed to determine whether coal miners qualify for compensatory benefits because they suffer from coal dust related pulmonary injuries, referred to as pneumoconiosis, and are totally disabled as a result. *See* 30 U.S.C. §§ 901–944.

3

"The courts have long recognized that pneumoconiosis can take two forms: 'clinical' pneumoconiosis and 'legal' pneumoconiosis." *Harman Mining Co. v. Dir., Off. of Workers' Comp. Programs*, 678 F.3d 305, 308 (4th Cir. 2012). While "clinical pneumoconiosis looks for the presence of particles in the lungs and the lungs' reaction to those particles, legal pneumoconiosis does not require evidence of particles in the miner's lungs." *Extra Energy, Inc. v. Lawson*, 140 F.4th 138, 144 (4th Cir. 2025) (cleaned up).

Relevant here, the Department of Labor ("DOL") regulations define legal pneumoconiosis as "any chronic lung disease or impairment and its sequelae" -- including, but not limited to, "any chronic restrictive or obstructive pulmonary disease" -- that "aris[es] out of coal mine employment." 20 C.F.R. § 718.201(a)(2). A disease "arising out of coal mine employment" need not be solely caused by coal dust. *See Extra Energy*, 140 F.4th at 144. Instead, legal pneumoconiosis "includes any chronic pulmonary disease or respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R. § 718.201(b). And, "[b]ecause 'by definition, legal pneumoconiosis arises out of coal mine employment,' a diagnosis of legal pneumoconiosis automatically satisfies the causal requirement between coal mine employment and the impairment." *Extra Energy*, 140 F.4th at 145 (quoting *Am. Energy, LLC v. Dir., Off. of Workers' Comp. Programs*, 106 F.4th 319, 325 (4th Cir. 2024)).

In the ordinary case, a miner seeking benefits bears the burden of proof. To be awarded benefits, a miner must prove four elements by a preponderance of the evidence: "(1) that he has [either clinical or legal] pneumoconiosis; (2) arising out of coal mine

4

employment; (3) that he is totally disabled by a pulmonary or respiratory impairment; and (4) that his pneumoconiosis is a substantially contributing cause of that total disability." *Extra Energy*, 140 F.4th at 144–45.

The DOL regulations set forth evidentiary limits applicable to claims for black lung benefits:

> The claimant is entitled to submit, in support of his affirmative case, no more than two chest X–ray interpretations, the results of no more than two pulmonary function tests, the results of no more than two arterial blood gas studies, no more than one report of an autopsy, no more than one report of each biopsy, and no more than two medical reports.

20 C.F.R. § 725.414(a)(2)(i). Importantly, "[n]otwithstanding the limitations in paragraphs (a)(2) and (a)(3)[1] of this section, any record of a miner's hospitalization for a respiratory or pulmonary or related disease, or medical treatment for a respiratory or pulmonary or related disease, may be received into evidence." *Id.* § 725.414(a)(4). And, relevant here:

> [A] medical report is a physician's written assessment of the miner's respiratory or pulmonary condition. A medical report may be prepared by a physician who examined the miner and/or reviewed the available admissible evidence . . . . A physician's written assessment of a single objective test, such as a chest X–ray or a pulmonary function test, is not a medical report for purposes of this section.

*Id.* § 725.414(a)(1).

---

[1] Subsection (a)(3) sets forth the evidence limits applicable to the coal operator's affirmative case and is not relevant to this appeal.

5

B.

Before the ALJ, Mullins presented evidence to demonstrate he had totally disabling legal pneumoconiosis.  Mullins presented two affirmative x-ray readings; two rebuttal x-ray readings; two affirmative pulmonary function tests ("PFTs"); medical reports from Dr. J. Randolph Forehand and Dr. Leonard Go; and treatment records from Dr. Sammar Atassi, Mullins' treating physician.  The two PFTs Mullins identified as affirmative evidence were dated September 11, 2019, and January 21, 2021.  In addition, the results of several other PFTs were submitted as treatment records, because those PFTs were performed as part of Mullins' medical treatment and not simply for the purpose of evaluating his claim for benefits.  20 C.F.R. § 725.414(a)(4).  Relevant here, Dr. Go considered and offered his "interpretation" of all of the PFTs in his medical report -- the two affirmative evidence tests, as well as all those included in Mullins' admissible treatment records.  J.A. 79–82.[2]  Dr. Go explained, "I provided my own analysis of the individual test[s] as well as the analysis provided by the original physician." *Id.* at 225.  Both Dr. Go and Dr. Forehand determined that Mullins is totally disabled due to legal pneumoconiosis.

Petitioner, as the party opposing Mullins' request for benefits, offered two x-ray readings; medical reports by Dr. Mohammed Ranavaya, Dr. George Zaldivar, and Dr. David Rosenburg; a transcript of Dr. Go's deposition, and treatment records from

---

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

Montgomery General Hospital and Dr. Attasi. While Petitioner's experts agreed that Mullins is totally disabled, they concluded that he does not suffer from legal pneumoconiosis at all. Instead, Drs. Ranavaya, Zaldivar, and Rosenburg concluded that Mullins' pulmonary impairment was caused by asthma, a coronary bypass surgery, and obesity.[3]

Petitioner's experts were of the opinion that Mullins' pulmonary impairment was attributable to asthma based on Mullins' supposed "very significant" response to bronchodilators during PFTs. J.A. 776–81. But Drs. Forehand and Go disagreed that Mullins' response to bronchodilators was significant and instead characterized it as "minimal" because, even after receiving bronchodilators, Mullins' pulmonary function still did not meet the American Thoracic Society definition of "reversibility"[4] and still fell within the DOL standard for total disability. *Id.* at 766–67, 769–71.

As to the coronary bypass surgery, Dr. Rosenburg opined that it was a cause of Mullins' pulmonary impairment because the surgery was performed by sternotomy.[5]

---

[3] But, of note, the record demonstrated that Mullins' body mass index did not classify him as obese.

[4] Reversibility refers to the reduction in airway obstruction that results when bronchodilator medications are administered to a person with a reversible airway obstruction.

[5] A sternotomy is "a procedure to create access to [the] heart" in which a "surgeon cuts through [the] breastbone or sternum and spreads the two sides apart to be able to see and operate on [the] heart." *Sternotomy*, Cleveland Clinic, https://my.clevelandclinic.org/health/treatments/24016-sternotomy [https://perma.cc/DC9J-QKML].

7

Even still, Dr. Rosenburg acknowledged that "reductions [in pulmonary function] from sternotomy [are] uncommon." J.A. 780. As Dr. Forehand explained, "[w]ithout significant surgical complications, coronary artery bypass graft surgery also will not cause a totally disabling restrictive lung disease. [Mullins'] treatment records make no mention of any surgical complications." *Id.* at 766.

The ALJ considered all of the evidence, including all of the medical reports, and concluded that the reports by Dr. Go and Dr. Ranavaya were entitled to the most weight. However, because Dr. Go diagnosed Mullins with legal pneumoconiosis and Dr. Ranavaya did not, the ALJ explained that she was required to "distinguish between the two and determine which opinion deserves the greatest weight." J.A. 785. To make this determination, the ALJ concluded that Dr. Go's assessment of the effect of bronchodilators was "slightly more persuasive." *Id.* And she concluded that Dr. Go's "relevant experience in black lung disease outweighs the experience of Dr. Ranavaya," such that Dr. Go was "better qualified to evaluate [Mullins] for legal pneumoconiosis." *Id.* at 785–86.

Based on these findings, the ALJ awarded benefits, concluding that Mullins suffers from totally disabling legal pneumoconiosis.

## II.

"[O]ur review of the Board's order is limited and is governed by the same standard the Board applies when reviewing an ALJ's decision." *Extra Energy, Inc. v. Lawson*, 140 F.4th 138, 146 (4th Cir. 2025) (cleaned up). "That standard is de novo for legal conclusions but highly deferential for factual findings." *Id.*

8

Where a case involves competing medical opinions, "[w]e defer to the ALJ's determination regarding the proper weight to be accorded competing medical evidence, and we must be careful not to substitute our judgment for that of the ALJ." *Extra Energy*, 140 F.4th at 146 (quoting *W. Va. CWP Fund v. Bender*, 782 F.3d 129, 144 (4th Cir. 2015)). "'[A]s trier of fact, the ALJ is not bound to accept the opinion or theory of any medical expert,' but instead 'must evaluate the evidence, weigh it, and draw [her] own conclusions.'" *Bender*, 782 F.3d at 144 (citation omitted). To be sure, "an ALJ may not credit or discredit expert testimony for no reason or for the wrong reason." *Sea "B" Mining Co. v. Addison*, 831 F.3d 244, 257 (4th Cir. 2016) (internal quotation marks and citation omitted). But at bottom, "[i]t is the role of the ALJ—not the appellate court—to resolve" a "battle of the experts." *Westmoreland Coal Co. v. Cochran*, 718 F.3d 319, 321, 324 (4th Cir. 2013).

"Therefore, we will not disrupt the ALJ's decision to credit the opinion of one expert over another." *Bender*, 782 F.3d at 145. "Rather, the duty to resolve conflicts in the evidence rests with the ALJ as factfinder. And when conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled or has pneumoconiosis, the responsibility for that decision falls on the ALJ." *Sea "B" Mining*, 831 F.3d at 252.

"We will not disturb an ALJ's factual finding, 'even if we disagree with it, provided the determination is supported by substantial evidence.'" *Am. Energy, LLC v. Dir., Off. of Workers' Comp. Programs*, 106 F.4th 319, 330 (4th Cir. 2024) (citation omitted). "To evaluate whether substantial evidence supports an ALJ's determination, we consider whether all of the relevant evidence has been analyzed and whether the ALJ

9

has sufficiently explained [her] rationale in crediting certain evidence." *Extra Energy*, 140 F.4th at 146 (quoting *Hobet Mining, LLC v. Epling*, 783 F.3d 498, 504 (4th Cir. 2015)).  "The ALJ's duty of explanation is satisfied if a reviewing court can discern what the ALJ did and why [she] did it." *Id.* (alterations and internal quotation marks omitted) (quoting *Island Creek Coal Co. v. Blankenship*, 123 F.4th 684, 695 (4th Cir. 2024)).

III.

A.

Petitioner first argues that the ALJ's award of benefits should be reversed because Dr. Go's medical report violated the evidence limits applicable here.  As explained above, the relevant regulations limit claimants to submission of two PFTs as affirmative evidence.  20 C.F.R. § 725.414(a)(2)(i).  But "[n]otwithstanding th[at] limitation[]" any treatment record "may be received into evidence." *Id.* § 725.414(a)(4).  And medical reports are "prepared by a physician who examined the miner and/or reviewed the available admissible evidence." *Id.* § 725.414(a)(1).

Petitioner argues that Dr. Go's medical report violated these evidentiary limits because Dr. Go "include[d] separate, individual interpretations of numerous [PFTs], which makes those [PFTs] affirmative evidence in excess of the evidence limitations." Opening Br. at 13.  Petitioner argues that Dr. Go was not permitted to provide analysis or interpretation of the PFTs in Mullins' treatment records that were not identified as affirmative evidence.  And by doing so, Petitioner argues, Dr. Go converted the treatment records into affirmative evidence.  Petitioner is wrong.

10

The regulations anticipate that the medical report will analyze more than the two affirmative PFTs because they specify that "[a]ny . . . pulmonary function test results . . . that appear in a medical report must each be admissible under [§ 725.414(a)(2) or (a)(4).]." 20 C.F.R. § 725.414(a)(2)(i). And, of course, subsection (a)(2) specifies the limits on affirmative evidence while subsection (a)(4) allows for the admission of treatment records "[n]otwithstanding the limitations in paragraph[] (a)(2)." Thus, because PFTs included in treatment records are admissible evidence, a physician may consider them in offering his medical report "assess[ing] [] the miner's respiratory or pulmonary condition," *id.* at § 725.414(a), without transforming those PFTs into affirmative evidence.

As the ALJ below explained in rejecting Petitioner's argument, "this is why you do medical records reviews[.]" J.A. 33. The point is "to have your expert look at a large body of medical evidence and to opine on what conclusions they're drawing from looking at that large body of medical evidence." *Id.* There is no reason why, under the governing regulations, a physician should be prohibited from considering all of the available admissible evidence in forming an opinion as to the existence of pneumoconiosis. Reviewing and interpreting results contained in admissible treatment records to form a medical opinion does not transform those results into affirmative evidence.

## B.

Petitioner next lodges two related challenges to the ALJ's finding of legal pneumoconiosis. First, Petitioner argues that the ALJ erred in crediting Dr. Go's opinion

11

and discrediting the opinions of Dr. Rosenberg and Dr. Zaldivar. Petitioner argues that the ALJ did not "properly examine[] the logic and rationale of the physicians." Opening Br. at 18. Next, Petitioner asserts that the ALJ's finding that Mullins is totally disabled due to pneumoconiosis is not supported by substantial evidence.

In our view, these issues amount to a question of "whether the ALJ erred in resolving [a] battle of the experts." *Extra Energy, Inc. v. Lawson*, 140 F.4th 138, 146 (4th Cir. 2025) (cleaned up). As we have explained, our review in such a situation is only to ensure the ALJ has considered "all of the relevant evidence" and "sufficiently explained [her] rationale." *Id.* The ALJ's "duty of explanation is satisfied if [we] can discern what the ALJ did and why [she] did it." *Id.*

We have reviewed the ALJ's thorough explanation of her rationale for crediting Dr. Go's opinion and discrediting the opinions of Dr. Rosenberg and Dr. Zaldivar. And we have no trouble concluding that the ALJ adequately considered all of the evidence and explained her reasoning when weighing the medical reports. In arguing to the contrary, Petitioner is, in essence, asking us to reweigh the evidence ourselves. That, we will not and cannot do.

As to the ALJ's finding that Mullins' legal pneumoconiosis caused his total disability, again the record supports this finding. Indeed, it is Petitioner's position that is not supported. "Long-standing precedent establishes that a medical opinion premised on an erroneous finding that a claimant does not suffer from pneumoconiosis is 'not worthy of much, if any, weight,' particularly with respect to whether a claimant's disability was caused by that disease." *Hobet Mining, LLC v. Epling*, 783 F.3d 498, 504 (4th Cir. 2015)

12

(quoting *Grigg v. Dir., Office of Workers' Comp. Programs*, 28 F.3d 416, 419 (4th Cir. 1994)). "This is a common-sense rule, for the credibility of a doctor's judgment as to whether pneumoconiosis is a cause of a miner's disability is necessarily influenced by the accuracy of his underlying diagnosis." *Id.* "Thus, opinions that erroneously fail to diagnose pneumoconiosis may not be credited at all, unless an ALJ is able to identify specific and persuasive reasons for concluding that the doctor's judgment on the question of disability causation does not rest upon the predicate misdiagnosis." *Id.* (cleaned up).

The ALJ explained that she discredited Dr. Ranavaya, Dr. Rosenberg, and Dr. Zaldivar's opinions because they "failed to diagnose [Mullins] with legal pneumoconiosis, and [they] subsequently did not attribute his respiratory impairment to legal pneumoconiosis." J.A. 797. And because Dr. Forehand and Dr. Go offered well reasoned and supported opinions that pneumoconiosis was the cause of Mullins' total disability, the ALJ credited their opinions. Here, too, the ALJ adequately explained what she did and why she did it. Therefore, we find the ALJ's opinion to be supported by substantial evidence.

## IV.

Because we conclude that Dr. Go's medical report did not violate the limitations on affirmative evidence and that the ALJ's finding of totally disabling legal pneumoconiosis is supported by substantial evidence, the petition for review is

*DENIED*.