**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 24-2262**

———————

WOLF RUN MINING COMPANY,

Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR; HAROLD BAISDEN, JR.,

Respondents.

———————

On Petition for Review of an Order of the Benefits Review Board.  (23-0250 BLA)

———————

Argued:  February 25, 2026                     Decided:  April 7, 2026

———————

Before DIAZ, Chief Judge, and KING and THACKER, Circuit Judges.

———————

Petition denied by published opinion.  Judge Thacker wrote the opinion in which Chief Judge Diaz and Judge King join.

———————

William Steele Mattingly, JACKSON KELLY PLLC, Lexington, Kentucky, for Petitioner. Brad Anthony Austin, WOLFE, WILLIAMS & AUSTIN, Norton, Virginia, for Respondent.

———————

THACKER, Circuit Judge:

Harold Baisden filed the instant claim for Black Lung benefits on December 11, 2017. An Administrative Law Judge ("ALJ") entered an Order awarding benefits on March 15, 2023. Because Baisden was entitled to a presumption that his lung disease was caused by pneumoconiosis, the question before the ALJ was whether the responsible coal operator, Wolf Run Mining Company ("Petitioner"), successfully rebutted that presumption. The ALJ concluded it did not do so. After the Benefits Review Board ("BRB") affirmed the ALJ, Petitioner filed this petition for review. Notably, however, Petitioner's briefing before this court wholly ignores its burden to establish that it rebutted the relevant presumption.

We find no legal error in the ALJ's decision and conclude that it was supported by substantial evidence. Therefore, we deny the petition.

I.

A.

For context, we begin with a brief discussion of the statutory and regulatory framework. The Black Lung Benefits Act ("BLBA") creates an adversarial administrative procedure designed to determine whether coal miners qualify for compensatory benefits because they suffer from coal dust related pulmonary injuries, referred to as pneumoconiosis, and are totally disabled as a result. *See* 30 U.S.C. §§ 901–944. Pneumoconiosis, commonly known as black lung disease, is "a chronic dust disease of the

2

lung and its sequelae,[1] including respiratory and pulmonary impairments, arising out of coal mine employment." *Id.* § 902(b). "The courts have long recognized that pneumoconiosis can take two forms: 'clinical' pneumoconiosis and 'legal' pneumoconiosis." *Harman Mining Co. v. Dir., Off. of Workers' Comp. Programs*, 678 F.3d 305, 308 (4th Cir. 2012). While "clinical pneumoconiosis looks for the presence of particles in the lungs and the lungs' reaction to those particles, legal pneumoconiosis does not require evidence of particles in the miner's lungs." *Extra Energy, Inc. v. Lawson*, 140 F.4th 138, 144 (4th Cir. 2025) (cleaned up). Legal pneumoconiosis "includes any chronic pulmonary disease or respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R. § 718.201(b).

In the ordinary case, a miner seeking benefits bears the burden of proof. To be awarded benefits, a miner must prove four elements by a preponderance of the evidence: "(1) that he has [either clinical or legal] pneumoconiosis (2) arising out of coal mine employment; (3) that he is totally disabled by a pulmonary or respiratory impairment; and (4) that his pneumoconiosis is a substantially contributing cause of that total disability." *Extra Energy, Inc.*, 140 F.4th at 144–45.

But the BLBA also offers "statutory presumptions that, if invoked, alter the claimant's burden of proof on some or all elements in the four-part default rule above."

---

[1] A sequela (plural, sequelae) is "an aftereffect of disease, condition, or injury." *Sequela*, Merriam-Webster (last accessed Mar. 24, 2026), https://www.merriam-webster.com/dictionary/sequela [https://perma.cc/G2W5-S95Q].

3

*Clinchfield Coal Co. v. DOWCP*, 164 F.4th 342, 347 (4th Cir. 2026). One such presumption is relevant here. Pursuant to 20 C.F.R. § 718.305(b), a miner who (1) has at least 15 years of qualifying coal mine employment and (2) establishes a totally disabling respiratory or pulmonary impairment is presumed to be totally disabled due to pneumoconiosis. "If invoked, the presumption supplies the remaining elements of entitlement, subject to the employer's rebuttal." *Clinchfield*, 164 F.4th at 347. Thereafter, the burden shifts to the employer to rebut the presumption by proving either that the miner has no form of pneumoconiosis *or* that "no part of the miner's respiratory or pulmonary total disability was caused by pneumoconiosis." 20 C.F.R. § 718.305(d)(1).

### B.

The ALJ determined that Baisden established 27 years of coal mine employment and that he is totally disabled due to a pulmonary or respiratory impairment. Petitioner does not dispute these determinations. And based on those findings, the ALJ determined that Baisden was entitled to the presumption that his total disability was caused by pneumoconiosis. Because Baisden was entitled to the presumption, the ALJ explained that the burden shifted to Petitioner to rebut the presumption by demonstrating either that Baisden does not have any form of pneumoconiosis, or that no part of his total disability was caused by pneumoconiosis.

Petitioner's primary argument before the ALJ was that Baisden did not suffer from any form of pneumoconiosis.[2]  There is no dispute that Baisden does not have clinical pneumoconiosis.  As to legal pneumoconiosis, Petitioner's experts, Dr. Thomas Jarboe and Dr. Mohammed Ranavaya, concluded that Baisden's undisputed history of smoking caused his totally disabling respiratory impairment, rather than coal dust.  The ALJ discredited those opinions because they were at odds with the Preamble to the 2000 Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, 65 Fed. Reg. 79920 (Dec. 20, 2000) (codified at 20 C.F.R. § 718.201), which sets forth the findings of the Department of Labor on certain medical questions and "provides guidance for the four elements of black lung benefits claims." *Am. Energy, LLC v. Director, OWCP*, 106 F.4th 319, 326 (4th Cir. 2024).  As the BRB has explained, "the [P]reamble comprises an authoritative statement of medical principles accepted by the Department of Labor."  J.A. 304 (citing *Tackett v. H.J. Mining Co., Inc.*, BRB No. 13-0502 BLA, at 9 (Jul. 10, 2014)).[3]

Relevant here, the Preamble acknowledges that coal dust and smoking can both cause lung disease.  But it also makes clear that a history of smoking does not preclude a finding of legal pneumoconiosis.  *See* 65 Fed. Reg. at 79940.  In fact, the Preamble "acknowledges the prevailing view of the medical community that the risks of smoking and coal mine dust exposure are additive." 65 Fed. Reg. at 79941).  The Preamble also

---

[2] The ALJ determined that Petitioner did not rebut the presumption by demonstrating that no part of Baisden's total disability was caused by pneumoconiosis. Because Petitioner does not dispute that finding, we do not address it further.

[3] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

5

recognizes that coal dust induced lung disease and smoking induced lung disease occur through similar mechanisms, such that the two may be difficult to distinguish based on symptoms alone. *See* 65 Fed. Reg. at 79943.

As the ALJ noted, Dr. Jarboe opined that smoking caused Baisden's lung impairment based on a disproportionate reduction in his $FEV_1/FVC$ ratio[4] and Baisden's partial response to bronchodilators. But as the ALJ recognized, the Preamble states that a reduction in $FEV_1/FVC$ ratio is also a "marker for obstructive lung disease including that caused by coal mine employment," and Dr. Jarboe failed to explain why coal dust was not an additive cause in this case. J.A. 303. The ALJ further noted that Baisden's lung obstruction "was only partially reversible as the results did not return to normal after the administration of bronchodilators." *Id.* Yet importantly, "Dr. Jarboe's explanation did not address the irreversible component of [Baisden's] obstruction and, thus, the possibility that [Baisden] has an obstruction due to cigarette smoking which responds to bronchodilators and an obstruction due to coal dust exposure which is not reversible and did not return to normal." *Id.* Mindful that the burden was on Petitioner to rebut the presumption that Baisden's lung impairment was caused by coal dust, the ALJ found that "Dr. Jarboe did not adequately or persuasively explain why both cigarette smoking and coal dust exposure were not causative elements of the chronic obstructive pulmonary disease present," and

---

[4] An $FEV_1/FVC$ ratio is a "measurement [that] compares the amount of air that a patient can forcibly exhale in the first second of exhalation with the total amount of air the patient can exhale in a single breath." *Westmoreland Coal Co. v. Stallard*, 876 F.3d 663 (4th Cir. 2017) (citing 20 C.F.R. § 718.204(b)(2)(i)(C)).

6

"Dr. Jarboe provided no rationale as to why coal dust-induced lung disease and tobacco smoke-induced lung disease are mutually exclusive diagnoses." *Id.* at 303–04. Therefore, the ALJ concluded that Dr. Jarboe's opinion was not well reasoned and was entitled to "little weight." *Id.* at 304.

As to Petitioner's other expert, the ALJ explained that Dr. Ranavaya "relied on the [bronchodilator] reversibility demonstrated on pulmonary function studies," but like Dr. Jarboe, "did not address the fact that the results did not return to normal after the administration of bronchodilators." J.A. 304. "Thus, Dr. Ranavaya's explanation which did not address the irreversible component of the obstruction does not address the possibility that [Baisden] has an obstruction due to both adult onset bronchial asthma due to smoking and chronic obstructive pulmonary disease due to coal dust exposure." *Id.* at 304–05. According to the ALJ, Dr. Ranavaya also "failed to discuss the additive effect of exposure to both cigarette smoke and coal mine dust." *Id.* at 305. Therefore, the ALJ found that the opinion of Dr. Ranavaya was "not well reasoned nor well supported and accord[ed] it less weight." *Id.*

In contrast, the ALJ explained that Baisden's experts, Dr. Jeffrey Werchowski and Dr. Michael Green, diagnosed legal pneumoconiosis and adequately discussed the additive effect of Baisden's exposure to both cigarette smoking and coal mine dust. The ALJ found both of their opinions to be "well reasoned and well supported by the objective pulmonary function study results which established total pulmonary disability even after the administration of bronchodilators." J.A. 305. And as the ALJ noted, "[t]he opinions of the Dr. Werchowski and Dr. Green do not assist [Petitioner] in rebutting the presumption." *Id.*

7

Based on those findings, the ALJ concluded that Petitioner failed to rebut the presumption that Baisden has legal pneumoconiosis.

Next, the ALJ considered whether Petitioner rebutted the presumption by demonstrating that the pneumoconiosis "did not contribute" at all to Baisden's total disability.  But given that Dr. Jarboe and Dr. Ranavaya did not diagnose legal pneumoconiosis, their disability causation analyses were irrelevant.  As the ALJ explained, we have long held that an ALJ who has found (or presumed) a diagnosis of legal pneumoconiosis "may not credit a medical opinion" that failed to diagnose pneumoconiosis for purposes of the disability causation analysis "unless the ALJ can and does identify specific and persuasive reasons for concluding that the doctor's judgment on the question of disability does not rest upon her disagreement with the ALJ's finding" of legal pneumoconiosis.  J.A. 306 (citing *Toler v. Eastern Associated Coal Co.*, 43 F.3d 109, 116 (4th Cir. 1995)).  Because the ALJ could not identify any such reason here, the ALJ disregarded the opinions of Dr. Jarboe and Dr. Ranavaya, concluded that Petitioner failed to rebut the presumption that Baisden's total disability was caused by pneumoconiosis, and awarded benefits.

Petitioner appealed the ALJ's decision to the BRB.  The BRB affirmed based on the same reasoning as the ALJ.  Petitioner timely filed this petition for review.

## II.

"[I]t is well established that our review of the [BRB]'s order is limited and is governed by the same standard the [BRB] applies when reviewing an ALJ's decision."

8

*Extra Energy, Inc. v. Lawson*, 140 F.4th 138, 146 (4th Cir. 2025) (cleaned up). "That standard is de novo for legal conclusions but highly deferential for factual findings." *Id.*

"We will not disturb an ALJ's factual finding, even if we disagree with it, provided the determination is supported by substantial evidence." *Extra Energy*, 140 F.4th at 146. "To evaluate whether substantial evidence supports an ALJ's determination, 'we consider whether all of the relevant evidence has been analyzed and whether the ALJ has sufficiently explained [her] rationale in crediting certain evidence.'" *Id.* (quoting *Hobet Mining, LLC v. Epling*, 783 F.3d 498, 504 (4th Cir. 2015)). "The ALJ's duty of explanation is satisfied if a reviewing court can discern what the ALJ did and why [she] did it." *Id.* (cleaned up).

## III.

## A.

### The ALJ Properly Considered the Preamble

Petitioner first argues that the ALJ committed legal error in her treatment of the Preamble. According to Petitioner, the ALJ treated the Preamble as creating a binding rule that smoking and coal mining are always additive risks and impermissibly shifted the burden to Petitioner to rebut coal dust as a cause of Baisden's lung disease.

### 1.

### The Preamble Establishes that Smoking and Coal Dust Are Additive

The Preamble "explains the scientific and medical basis for the regulations, and provides guidance for the four elements of black lung benefits claims." *Extra Energy, Inc. v. Lawson*, 140 F.4th 138, 147 (4th Cir. 2025) (cleaned up). "While the preamble is nonbinding guidance, we have said that it is entirely consistent with the [BLBA] and its

9

regulations and simply explains the scientific and medical basis for the regulations." *Id.* (cleaned up). "Thus, ALJs have 'discretion to reject the opinions of . . . experts based on the preamble.'" *Id.* (citation omitted). "Indeed, we have held that [i]t is appropriate to give little weight . . . to medical findings that conflict with the [Black Lung Benefits Act]'s implementing regulations." *Id.* (quoting *Westmoreland Coal Co. v. Stallard*, 876 F.3d 663, 671 (4th Cir. 2017)) (internal quotation marks omitted). But we have cautioned, "the principle that an ALJ may discredit an expert's opinion as inconsistent with the preamble *only* applies if the opinion is, *in fact*, inconsistent with the preamble." *Am. Energy, LLC v. DOWCP*, 106 F.4th 319, 332 (4th Cir. 2024) (emphases supplied).

As noted above, the Preamble acknowledges that coal dust and smoking can both cause lung disease and that a history of smoking does not preclude a finding of legal pneumoconiosis. *See* Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, 65 Fed. Reg. 79920, 79940 (Dec. 20, 2000) (codified at 20 C.F.R. § 718.201). The Preamble "acknowledges the prevailing view of the medical community that the risks of smoking and coal mine dust exposure are additive," and recognizes that coal dust induced lung disease and smoking induced lung disease occur through similar mechanisms, such that the two may be difficult to distinguish based on symptoms alone. *See* 65 Fed. Reg. at 79943. The ALJ discredited the opinions of Dr. Jarboe and Dr. Ranavaya because they failed to consider the additive risks of smoking and coal dust, and they did not adequately explain why coal dust was not a cause of Baisden's lung impairment.

10

2.

### The Presumption, Not the Preamble, Shifts the Burden

Petitioner argues that the ALJ's rulings misapplied the Preamble by turning it into a "rule that . . . smoking and coal mining [are] always additive risks." Opening Br. at 12. According to Petitioner, such a rule is improper because "it switches the burden of proof" and requires the employer to rebut coal dust as a cause in every case. *Id.* at 13. In support, Petitioner relies on *American Energy*, **a non-presumption case** where we explained that the BLBA and its implementing regulations "place the burden of proving pneumoconiosis on the miner, not the employer. So, American Energy has no burden to prove that coal dust exposure *did not* cause Mr. Goode's respiratory impairment—it is [the miner] who has the burden to prove that coal dust exposure *did* cause it." *Am. Energy*, 106 F.4th at 332. Thus, *American Energy* stands for the proposition that in a **non-presumption case**, an ALJ may not discredit an expert opinion as inconsistent with the Preamble simply because it does not exclude coal dust as a cause. Nor may the ALJ credit an expert opinion as consistent with the Preamble simply because it finds smoking and coal dust "as dual causes of a miner's respiratory impairment . . . even if [that] opinion[] [is] not supported by the actual evidence." *Id.* at 333.

Petitioner's argument is misplaced. *American Energy* is wholly inapplicable here. Unlike in *American Energy*, which, as noted, was a **non-presumption case**, the presumption applies in this case. That means that Baisden enjoys a presumption that his 27 years of coal mine work caused his pneumoconiosis -- i.e., that his lung impairment *was caused* by coal dust. Although Dr. Jarboe and Dr. Ranavaya concluded that Baisden's lung

11

impairment was caused instead by smoking, they did not explain why coal dust was not also a cause. This fact undercuts Petitioner's argument. As the ALJ explained, the opinions of Dr. Jarboe and Dr. Ranavaya are insufficient to rebut the presumption because the Preamble concludes that coal dust and smoking are additive causes. While *American Energy* held that in a **non-presumption** case, it would be improper for the ALJ to shift the burden to the employer to demonstrate why coal dust did not cause the impairment, 106 F.4th at 332, that rule has no application in a presumption case like this one. To the contrary, the entire point of the presumption is that it shifts the burden to the employer to *exclude* coal dust as a cause.

The ALJ did not improperly find a binding presumption in the preamble or improperly shift the burden on that basis. Instead, the ALJ merely applied the 15 year presumption and appropriately required Petitioner to rebut it. That was not legal error.

B.

<u>The ALJ Considered the Evidence and</u>
<u>Adequately Explained Her Decision</u>

Petitioner next argues that the ALJ erred by not fully considering the opinions of Dr. Jarboe and Dr. Ranavaya before discrediting them.[5] As we have repeatedly explained, "the ALJ, as the trier of fact, 'is charged with making factual findings, including evaluating

---

[5] Petitioner also argues that the ALJ erred in crediting Baisden's experts, Dr. Werchowski and Dr. Green. But as both the ALJ and the BRB explained, their opinions were not relevant to whether Petitioner rebutted the applicable presumption, which is the only question presented in this case. Thus, it is not necessary for us to consider the ALJ's treatment of those expert opinions.

12

the credibility of witnesses and weighing contradicting evidence.'" *Extra Energy*, 140 F.4th at 146 (quoting *Mingo Logan Coal Co. v. Owens*, 724 F.3d 550, 557 (4th Cir. 2013)). "For this reason, 'we do not undertake to reweigh contradictory medical evidence, make credibility determinations, or substitute our judgment for that reached below.'" *Id.* (quoting *Sea "B" Mining Co. v. Addison*, 831 F.3d 244, 252 (4th Cir. 2016)).

Where a case involves competing medical opinions, "[w]e defer to the ALJ's determination regarding the proper weight to be accorded competing medical evidence, and we must be careful not to substitute our judgment for that of the ALJ." *Extra Energy*, 140 F.4th at 146 (quoting *W. Va. CWP Fund v. Bender*, 782 F.3d 129, 144 (4th Cir. 2015)). "The ALJ is not bound to accept the opinion or theory of any medical expert, but instead must evaluate the evidence, weigh it, and draw his own conclusions." *Bender*, 782 F.3d at 144 (cleaned up).

To be sure, "an ALJ may not credit or discredit expert testimony for no reason or for the wrong reason." *Sea "B" Mining*, 831 F.3d at 257 (internal quotation marks and citation omitted). Nonetheless, "[w]e will not disturb an ALJ's factual finding, 'even if we disagree with it, provided the determination is supported by substantial evidence.'" *Am. Energy*, 106 F.4th at 330 (citation omitted). "To evaluate whether substantial evidence supports an ALJ's determination, we consider whether all of the relevant evidence has been analyzed and whether the ALJ has sufficiently explained [her] rationale in crediting certain evidence." *Extra Energy*, 140 F.4th at 146 (quoting *Hobet Mining, LLC v. Epling*, 783 F.3d 498, 504 (4th Cir. 2015)). "The ALJ's duty of explanation is satisfied if a reviewing court can discern what the ALJ did and why [she] did it." *Id.* (cleaned up).

13

1.

<u>Dr. Jarboe Failed to Exclude Coal Dust as a Cause</u>
<u>and the ALJ Properly Discredited His Opinion</u>

Here, Petitioner argues that the ALJ improperly considered the opinion of Dr. Jarboe because the ALJ purportedly focused solely on Dr. Jarboe's $FEV_1$/FVC ratio analysis to discredit his opinion, rather than considering the other bases for his diagnosis. This is not accurate. The ALJ spent five paragraphs of her decision discussing each rationale Dr. Jarboe offered for his conclusion that Baisden's lung impairment was caused by smoking. The ALJ simply was not convinced by those rationales. As the ALJ explained, smoking and coal dust are additive causes. And again, because the presumption applies here, we presume coal dust *is* a cause unless Petitioner can prove that it is not. But "Dr. Jarboe provided no rationale as to why coal dust-induced lung disease and tobacco smoke-induced lung disease are mutually exclusive diagnoses" and "did not adequately or persuasively explain why both cigarette smoking and coal dust exposure were not causative elements of the chronic obstructive pulmonary disease present" here. J.A. 303–04.

Petitioner further argues that the ALJ's reasoning for rejecting Dr. Jarboe's $FEV_1$/FVC analysis was legally flawed because she did not consider the medical evidence in the literature Dr. Jarboe cited. Dr. Jarboe concluded that the ratios over time indicated that Baisden's severe airflow obstruction arose from cigarette smoking but not the inhalation of coal mine dust. According to Dr. Jarboe, medical literature supported his conclusion that exposure to coal mine dust results in a parallel reduction in $FEV_1$ and FVC (or even a greater decline in FVC) while cigarette smoking results in a disproportionate

14

reduction in $FEV_1$ as compared to FVC. The ALJ rejected this reasoning because the Preamble does not adopt the view that $FEV_1$ reductions could distinguish between coal induced and smoking induced lung disease.

As Petitioner recognizes, "[i]n prior decisions, this Court has agreed the ALJ in question did not err in rejecting an opinion regarding the $FEV_1$/FVC ratio's ability to show particularized causation." Opening Br. at 15 (citing *Westmoreland Coal Co.*, 876 F.3d at 672). But Petitioner urges us to decide the issue differently here because Dr. Jarboe challenged "the substance of the scientific dispute." Opening Br. at 15. Significantly, however, Dr. Jarboe relied largely on studies that were conducted before the 2000 Preamble. As a result, those studies -- and Dr. Jarboe's analysis -- conflict with the view of the DOL, as expressed in the Preamble, that $FEV_1$/FVC ratios are not a reliable method of establishing causation.

2.

### The ALJ Properly Discredited the Opinion of Dr. Ranavaya

The ALJ explained that Dr. Ranavaya "relied on the [bronchodilator] reversibility demonstrated on pulmonary function studies" but "did not address the fact that the results did not return to normal after the administration of bronchodilators." J.A. 304. Petitioner argues that Dr. Ranavaya *did* address the nonreversible portion by explaining that "complete reversal of $FEV_1$ is [not] necessary to make the diagnosis" of asthma because "as the disease progresses over time, it causes airway remodeling similar to [COPD] with both a reversible as well as a fixed obstruct[ion]." *Id.* at 179.

15

Although this discussion might have been sufficient in a non-presumption case, it fails here because Petitioner had a duty to affirmatively exclude coal dust as a cause. As the ALJ explained, Dr. Ranavaya did "not address the possibility that [Baisden] has an obstruction due to both adult onset bronchial asthma due to smoking and chronic obstructive pulmonary disease due to coal dust exposure." J.A. 304–05. Further, he also "failed to discuss the additive effect of exposure to both cigarette smoke and coal mine dust." *Id.* This fact is significant because the ALJ was required to presume that coal dust was a cause of the impairment. To overcome that presumption, Dr. Ranavaya needed to exclude coal dust as a cause, rather than simply include smoking induced asthma as a cause of Baisden's lung disease. He did not do so.

### 3.

### The ALJ's Decision is Supported by Substantial Evidence

The ALJ did all that was required. She demonstrated that she considered the reports and thoroughly explained why she rejected the reasoning of Petitioner's experts. Therefore, we hold that the ALJ's finding that Petitioner failed to rebut the presumption that Baisden has legal pneumoconiosis is supported by substantial evidence.

### IV.

The petition for review is

*DENIED.*

16